Michael P. Laffey (ID # 026761986)
**MESSINA LAW FIRM, P.C.**
961 Holmdel Road
Holmdel. New Jersey 07733
(732) 332-9300
*Attorneys for Plaintiffs Michael and
Jennifer Lasche*

|  |  |
|---|---|
| MICHAEL LASCHE and JENNIFER LASCHE<br><br>            Plaintiffs<br><br>vs.<br><br>THE STATE OF NEW JERSY, THE DIVISION OF CHILD PROTECTION AND PERMANENCY, KYLE HIGGINS PERSONALLY AND IN HER OFFICIAL CAPACITY; KATIE EPPERLY, PERSONALLY AND IN HER OFFICIAL CAPACITY; MARY LIPPENCOT, PERSONALLY AND IN HER OFFICIAL CAPACITY; JANELLE CLARK, PERSONALLY AND IN HER OFFICIAL CAPACITY AND JOHN OR JANE DOES 1 THROUGH 10 PERSONALLY AND IN THEIR OFFICIAL CAPACITY<br>            Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION – MONMOUTH COUNTY<br><br>Docket No.<br><br>        Civil Action<br><br>**COMPLAINT AND<br>JURY DEMAND** |

Plaintiffs, Michael Lasche and Jennifer Lasche, individuals residing Monmouth County, New Jersey, by way of complaint against the Defendants say:

## **AVERMENTS APPLICABLE TO ALL COUNTS**

### **THE PARTIES**

1. The Plaintiffs, Michael and Jennifer Lasche are Foster Parents licensed by the State of New Jersey. They are devout Christians who hold to traditional values and beliefs about family, marriage and sex. Plaintiffs had Fostered children prior to the events set forth herein. Jennifer Lasche is also a former foster child who was adopted by her Foster Parents. Plaintiffs will suffer continuing damage as a result of the discriminatory and unconstitutional actions and policies of the DCP&P and/or its employees, agents and/or contractors.

2. The Division of Child Placement and Permanency is New Jersey's child protection and child welfare agency within the New Jersey Department of Children and Families (DCP&P). The local office of the DCP&P is located in Asbury Park, Monmouth County New Jersey

3. Defendant Kyle Higgins is the DCP&P caseworker assigned to a foster child that had been placed with Plaintiffs. She is being sued in her official and individual capacities

4. On information and belief Defendant Katie Epperly is Kyle Higgin's DCP&P Supervisor. She is being sued in her official and individual capacities.

5. On information and belief Defendant Mary Lippencott is Katie Epperly's Supervisor at the DCP&P. She is being sued in her official and individual capacities

6. On information and belief Defendant Janelle Clark is a resource worker in the Monmouth Office of the DCP&P. She is being sued in her official and individual capacities.

7. John and Jane Doe 1 through 10 are unknown employees, agents or contractors of the DCP&P who were involved in the allegations set forth below and violated Plaintiffs' rights as set forth below. They are being sued in their official and individual capacities.

**FACTS RELEVANT TO ALL COUNTS**

8. On or about September 1, 2017, the defendants Kyle Higgins and Katie Epperly called the Plaintiffs about two girls being removed from a foster home and asked if Plaintiffs would

take them in. The girls were ages 13 (hereinafter referred to as "Foster child 1") and 10 (hereinafter referred to as "Foster child 2") (hereinafter collectively referred to as the "Foster children"). Plaintiffs agreed to the placement. Foster Child 1 was the oldest of five siblings placed in Foster Care.

9. During the placement, Kyle Higgins advised the Plaintiffs that the girls' cases were moving towards adoption and that the natural father's rights were already terminated.

10. In October of 2017, during the monthly visit, Kyle Higgins advised Plaintiffs that the case is moving towards adoption and that they would have the first choice to adopt the girls.

11. In November of 2017, Plaintiffs were advised that the natural mother had surrendered her parental rights and that the children were now free for adoption.

12. In December of 2017, Kyle Higgins met with the Plaintiffs and informed them that they were in consideration for adoption

13. Three weeks after the December meeting Plaintiffs were informed by Kyle Higgins that a family in Illinois was interested in adopting all five children and Plaintiffs were told what the plan was for proceeding with that.

14. The Plaintiffs and the children both asked Defendants Kyle Higgins and Katie Epperly questions about the family. These defendants claimed to not know the answers. It later came to the attention of Plaintiffs, that the foster parents of the two younger brothers and younger sister of the Foster child 1 and Foster child 2 had been given details about the Illinois family. One of the foster parents advised Plaintiffs that the potential adoptive family "were two wealthy gay men with lots of family around to support them and the adoption." Plaintiffs were baffled as to why the caseworker refused to share this information with them.

15. A few days thereafter Defendant Kyle Higgins came to Plaintiffs home and expressed

she heard that the two Foster children were anxious to have their questions answered about the adoptive home. During Defendant Kyle Higgin's discussion with the Foster Child 1 she questioned the child about her religious beliefs concerning homosexuality and asked her if she would change her religious beliefs if she went with another family.

16. In April of 2018, Foster Child 2 was removed from Plaintiffs home for confidential reasons unique to Foster child 2. This was by agreement between the Plaintiffs and DCP&P.

17. On May 22, 2018 Plaintiff Jennifer Lasche met with Kyle Higgins and the therapist for the Foster Child 1. At that meeting Plaintiff, Defendant Higgins and the therapist agreed not to discuss adoption with the foster child because it was too soon after Foster Child 2's removal and put too much pressure on Foster Child 1. The therapist said that she wanted Foster Child 1 to just be able to relax and be part of the family as they all got readjusted to the new living situation. Plaintiff agreed this was best for Foster Child 1. There was some discussion among the meeting participants of Foster Child 1 possibly exploring time with her siblings to see if she wanted to be adopted with them. Plaintiff was not opposed to letting Foster Child 1 explore that and allowing her to make the decision without any question or resentment.

18. At that meeting, Defendant Higgins discussed that there was going to be a Court date on June 4, 2018, where the options for all five Foster children would be presented to the Judge for a decision as to what would be best for the children. Those options would be for the Foster Children to be adopted by the families where they were currently placed or for all five Foster children to be adopted by the Illinois family. Defendant Higgins further represented that the Division was not going to take a position but instead would let the law guardians advocate for the Children.

19. On June 4, 2018, the Plaintiffs received a text from Foster child 1's law guardian that the Illinois couple was off the table and that the judge wanted psychiatric evaluations of all of the

children before a permanent plan was put into place.

20. On or about June 31, 2018 Foster child 1 came home from her regularly scheduled therapy meeting and appeared very upset. She stated she was upset because the therapist kept bringing up religion and told her she should not feel pressured to follow her foster family's religious beliefs.

21. On June 19, 2018 Plaintiff Jennifer Lasche received a phone call from Defendant Kyle Higgins who begins to discuss transitioning Foster child 1 to her foster brother's home. Plaintiff expressed confusion because she thought the plan was to move forward with adoption of all the children in their current foster placements.

22. The Plaintiff then called the law guardian for Foster child 1 who expressed surprise and confusion at what was said during the conversation and said she would investigate

23. Shortly thereafter the therapist arrived at the house for Foster Child 1's therapy session. Plaintiff Jennifer Lasche confronted the therapist and asked why Foster child 1 was being asked if she was being pressured to follow their religion. She tried to cover by saying it was normal to discuss how people have different beliefs, ethics, religion etc., however, after being pressed the Therapist admitted getting a phone call from Defendant Higgins before the session. The Therapist said that the Division brought to her attention that there had been a conversation that was had with Plaintiffs about the Foster Children being placed out of state with a homosexual couple, The Therapist also stated that there was "a conversation with Defendant Kyle Higgins about the Illinois couple" and "discussion about "Plaintiffs' ideas about same-sex couples." She also said that in that conversation Defendant Kyle Higgins told the therapist that the therapist was to discuss with Foster child 1 being placed with her brothers.

5

24. On or about June 21, 2018, Foster Child 1 was picked by Defendant Kyle Higgins and another woman ostensibly for her sibling visit. It was very rare for Defendant Kyle Higgins to transport Foster Child 1 to this visit. On information and belief, they stopped at Dunkin Donuts where they interrogated Foster child 1 and lied to her in an effort to intimidate her into agreeing that she did not want to be adopted by Plaintiffs. For instance, Defendant Kyle Higgins asked the Foster child "So I hear that Mrs. Lasche tells you every time I call her" This statement was untrue and Defendant had no way of knowing if this was the case or not.

25. While at the Dunkin Donuts Defendant, Kyle Higgins told Foster Child 1 that Plaintiffs would not be able to "meet her needs." They once again interrogated Foster Child 1 about her religious beliefs. At the conclusion of this interrogation instead of taking Foster Child 1 to the office for her sibling visit, as was usually the case, she was taken to the home where her foster brothers were living.

26. On return Defendant Kyle Higgins stated to Plaintiffs that she knew Foster Child 1 wanted to stay with them and that "we' (the DCP&P) understand that and "want to work with you because we want what's in her (foster Child 1's) best interests. Defendant Kyle Higgins then stated, "we (DCP&P) would like to have a meeting with you".

27. The next day, Plaintiffs spoke to Defendants Kyle Higgins and Katie Epperly on the telephone to schedule the meeting. When questioned about the purpose of the meeting, Defendant Katie Epperly indicated that the DCP&P was concerned that both Foster child 1 and Foster Child 2 indicated that same-sex relationships were against their religion. Defendant Katie Epperly stated that "they" felt the children had gotten that belief from the Plaintiffs.

28. On Friday, June 29, 2018, a meeting was held at the Monmouth County office of the DCP&P. Present at that meeting were the Plaintiffs, their attorney, Defendants Kyle Higgins, Katie

6

Epperly, Mary Lippencot and Janelle Clark, an attorney for the State of New Jersey, and one or two additional employees of the DCP&P.

29. At the June 29th meeting, the representatives of the DCP&P expressed concern that the Plaintiffs believed homosexuality was a sin. They expressed concern that the Plaintiffs would reject Foster child 1 if she ever decided to explore her sexuality and sought assurance from the Plaintiffs that would not be the case. One of the individual defendants indicted that Foster child 1 would need therapy to deal with her belief that homosexuality was a sin to avoid possible future harm.

30. On Monday, July 2, 2018, the DCP&P went before the Family Court and sought the removal of Foster child 1 from Plaintiffs' custody. The law guardian appointed to represent the interests of Foster Child 1told Plaintiffs that this was done over her objections.

31. Plaintiffs were not given notice that they had a right to be heard at the hearing. This failure to give notice an and opportunity to be heard is a violation of Plaintiffs' Due Process rights.

32. The next day the DCP&P removed Foster child 1 from Plaintiffs' home in spite of their wish to adopt said child and in complete disregard of the wishes of the child. Foster Child 1 was placed in the foster home where foster child 2 had been placed. Plaintiffs have not seen the child since July 3, 2018.

33. On information and belief, a therapist had advised the DCP&P that because, as the oldest child of the five siblings, Foster child 1 had become so "parentified" by her younger siblings as a result of trauma in the biological home. The therapist further opined that it was in Foster Child 1's best interests to be adopted alone.

34. On October 12, 2018, a representative of the DCP&P arrived at the Plaintiffs' house to perform the required yearly inspection that is necessary for a Foster Parents license to be renewed.

35. When the inspection was completed, the inspector asked the Plaintiffs if they knew that their license was suspended by the Monmouth County DCP&P office. Plaintiffs informed the inspector that they were not aware that they had been suspended. The inspector then informed them that the Monmouth County office should have notified Plaintiffs that they were suspended and told them what the reasons for the suspension were.

36. The only apparent basis for suspending Plaintiffs as Foster Parents and for the removal of Foster Child 1 from Plaintiffs home was because of the Plaintiffs' religious belief that homosexuality is a sin.

## COUNT I

## VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION

## N.J.S.A. § 10:5-1 et. seq.

37. Plaintiffs repeat each and every allegation set forth in paragraphs 1-36 as if set forth more fully herein.

38. The DCP&P is a place of public accommodation.

39. The State of NJ, The DCP&P, and all the individual defendants have denied the Plaintiffs the ability to adopt and /or foster a child because of Plaintiff's religious beliefs.

40. The acts of the Defendants are violations of N.J.S.A. § 10:5-4.

WHEREFORE Plaintiffs demand judgment for injunctive relief, damages, punitive damages, attorney fees and costs of suit.

## COUNT II

### VIOLATION OF THE NEW JERSEY CIVIL RIGHTS ACT

### N.J.S.A. § 10:6-1

41. Plaintiffs repeat each and every allegation set forth in Paragraphs 1-40 as if set forth more fully herein.

42. The acts of the Defendants have deprived the Plaintiffs of their substantive due process, equal protection rights, privileges or immunities secured by the Constitution or laws of the United States and by the Constitution of the State of New Jersey in violation of N.J.S.A. § 10:6-2(c).

WHEREFORE, Plaintiffs demand judgment for injunctive relief damages, punitive damages, injunctive relief, attorney fees and costs of suit.

## COUNT III

### ACTION PURSUANT TO 42 USCS §§ 1983 FOR VIOLATION OF PLAINTIFFS CONSTITUTIONAL RIGHTS

43. Plaintiffs repeat each and every allegation set forth in Counts 1 through 42 as if set forth more fully herein.

44. At all relevant times herein the individual defendants acted under color of state law.

45. The individual defendants took discriminatory action against the Plaintiffs on the basis of Plaintiffs' religious beliefs in violation of the First Amendment to the Constitution of the United States.

46. The individual Defendants took actions adversely affecting the Plaintiffs without giving them notice and an opportunity to be heard in violation of Plaintiffs' rights pursuant to the 14th Amendment to the Constitution.

47. Plaintiffs have a constitutionally protectable interest in Foster Child 1 in that that they had a close familial relationship with said Foster child 1 and that interest was arbitrarily denied them in violation of the 5th and 14th amendments to the Constitution.

48. The actions of the Defendants deprived Plaintiffs of their rights, privileges, or immunities secured by the Constitution.

WHEREFORE pursuant to 42 USCS §§ 1983 Plaintiffs demand Judgment against the individual Defendants for damages, punitive damages, injunctive relief, attorney fees and costs of suit.

## COUNT IV

## ACTION PURSUANT TO 42 USCS § 1985 FOR CONSPIRACY TO VIOLATE PLAINTIFFS CONSTITUTIONAL RIGHTS

49. Plaintiffs repeat each and every allegation set forth in paragraphs 1-48 as if set forth more fully herein.

50. The individual Defendants conspired for the purpose of depriving Plaintiffs either directly or indirectly, the equal protection of the laws, and / or of the equal privileges and immunities under the laws.

51. As a result of said conspiracy Plaintiffs have been deprived of having and exercising the rights or privilege of a citizen of the United States, granted pursuant to the 1st, 5th and 14th Amendments to the Constitution.

WHEREFORE pursuant to 42 USCS § 1985 Plaintiffs demand Judgment against the individual Defendants for damages, Punitive damages, injunctive relief, attorney fees and costs of suit.

MESSINA LAW FIRM, P.C.

Dated: November 19, 2018   By: *[signature]*
Michael P. Laffey
*Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all matters properly triable thereto.

Dated: November 19, 2018

*[signature]*
Michael P. Laffey

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, plaintiff designates Michael P. Laffey, Esq. as its trial counsel in this matter.

Dated: November 19, 2018

*[signature]*
Michael P. Laffey

## CERTIFICATION PURSUANT TO RULE 4:5-1

I certify, in accordance with the requirements of Rule 4:5-1, that the matters in controversy

11

are not subject to any other pending action or arbitration and no such other proceedings are Contemplated. Plaintiffs further certify that they presently have no knowledge of other parties who should be, but have not been, joined in the within action.

Dated: November 19, 2018

*/s/ Michael P. Laffey*
Michael P. Laffey

## CERTIFICATION PURSUANT TO RULE 1:38-7(b)

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

Dated: November 19, 2018

*/s/ Michael P. Laffey*
Michael P. Laffey

# Civil Case Information Statement

**Case Details: MONMOUTH | Civil Part Docket# L-004157-18**

**Case Caption:** LASCHE MICHAEL  VS THE STATE OF NEW JER SEY

**Case Initiation Date:** 11/19/2018

**Attorney Name:** MICHAEL P LAFFEY

**Firm Name:** MESSINA LAW FIRM

**Address:** 961 HOLMDEL RD
HOLMDEL NJ 07733

**Phone:**

**Name of Party:** PLAINTIFF : Lasche, Michael

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** CIVIL RIGHTS

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Hurricane Sandy related?** NO

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** YES

---

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Other(explain)   Licensed by State as Foster Parents

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**
Individual management - Discovery includes confidential info of a foster child which requires a Court Order to be produced

**Do you or your client need any disability accommodations?** NO
    **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
    **If yes, for what language:**

---

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

11/19/2018
Dated

/s/ MICHAEL P LAFFEY
Signed