UNITED STATE DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL LASCHE AND<br>JENNEFER LASCHE<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF NEW JERSEY, ET. AL.,<br><br>Defendants. | Civil Action No. 3:18-cv-17552-FLW-TJB<br><br>BRIEF IN OPPOSITION TO MOTION TO<br>DISMISS COMPLAINT |

MESSINA LAW FIRM, P.C.
961 Holmdel Road
Holmdel, NJ 07733
(732) 332-9300
mlaffey@messinalawfirm.com
Attorneys for Plaintiffs

Michael P. Laffey Esq.
On The Brief

## TABLE OF CONTENTS

                                                          **PAGE**

TABLE OF AUTHORITES ……………………………………………………….. iii

PRELIMINARY STATEMENT...……………………………………………….… 1

STAEMENT OF FACTS ……………………………………………………….… 1

LEGAL ARGUMENT

POINT I

PLAINTIFFS CLAIMS DO NOT INFRINGE UPON THE
 DEFENDANTS SOVERIEGN IMMUNITY……………………………………….. 4


POINT II

BY REMOVING THIS CASE TO FEDERAL COURT THE
DEFENDANTS HAVE WAIVED THEIR SOVERIEGN
IMMUNITY DEFENSE……………………………………………………………. 5


POINT III
THE INDIVIDUAL DEFENDANTS ACTING IN THEIR
OFFICIAL CAPACITY ARE "PERSONS" UNDER § 1983
BECAUSE OF THE NATURE OF THE RELIEF PLAINTIFFS SEEK…………….. 5


POINT IV
WHILE PLAINTIFFS MAY NOT HAVE A CONSTITUTIONAL
RIGHT TO ADOPT A SPECIFIC CHILD THEY DO HAVE A
RIGHT TO PARTICIPATE IN THE FOSTER CARE AND
ADOPTION SYSTEM WITHOUT BEING SUBJECT TO PREJUDICE
AND DISCRIMINATION…………………………………………………….…… 6


POINT V
DEFENDANTS DO NOT HAVE ABSOLUTE IMMUNITY
FOR EACH AND EVERY ACT OF DISCRIMINATION SET FORTH IN
THE COMPLAINT OR FOR THE PATTERN OF DISCRIMINATION
THEY ENGAGED IN……………………………………………………………. 8

POINT VI
PLAINTIFF'S ARE NOT ENTITLED TO QUALIFIED IMMUNITY
BECAUSE THE LAW CLEARLY ESTABLISHES
THAT THE STATE CAN NOT DISCRIMINATE AGAINST
SOMEONE BASED ON THEIR RELIGIOUS BELIEFS………………………….. 9


POINT VII
THE DCP&P IS A PLACE OF PUBLIC ACCOMODATION
SUBJECT TO THE NEW JERSEY LAW AGAINST DISCRIMINATION ……… 11

CONCLUSION ………………………………………………………………………… 12

# TABLE OF AUTHORITIES

## Cases

                                                                                                    **PAGE**

*Ae Ja Elliot-Park v. Manglona*, 592 F.3d 1003 (9th Cir. 2010). ............................... 10

*BSA v. Dale* 530 U.S. 640 (2000)............................................................... 11

*Church of Lukumi Babalu Aye v. City of Hialeah,* 508 U.S. 520 (1993).................... 10

*B.S. v. Somerset County,* 704 F.sd 250 (2013)................................................... 8

*Dale v. BSA,* 160 N.J. 562, 593 n.7 (1999)...................................................... 12

*Doe v. Div. of Youth & Family Servs.*,148 F. Supp. 2d 462 (D.N.J. 2001)................... 12

*Edelman v. Jordan*, 415 U.S. 651 (1974) ........................................................ 4

*Ernst v. Child and Youth Services of Chester County*
108 F.3d 486 (3d Cir.1997) ....................................................................... 8

*Ex Part Young* 2019 US 123 (1908) ............................................................. 4

Frew v. Hawkins, 540 U.S. 431, 437 (2004)..................................................... 4

*Green v. Mansour*, 474 U.S. 64 (1985).......................................................... 4

*Hafer v. Melo*, 502 U.S. 21 (1991) ............................................................... 5

*Hope v. Pelzer,* 536 U.S. 730, 733, (2002)...................................................... 10

*Hutto v. Finney* 437 US 678 (1979)............................................................. 4

*Imbler v. Pachtman*, 424 U.S. 409, (1976)...................................................... 8

*In re "E",* 59 N.J. 36, 53 (1971)............................................................ 6, 10

*Lapides v. Bd. of Regents*, 535 U.S. 613 (2002)................................................ 5

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n,*
138 S. Ct. 1719 (2018)........................................................................... 10

*Milliken v. Bradley*, 433 U.S. 267 (1977)....................................................... 4

*Obergefell v. Hodges,* 135 S. Ct. 2584 (2015)............................................... 7, 10

*Ptaszynski v. Unaneme,* 371 N.J. Super. 333 (App. Div. 2004)............................... 11

*Smith v. Organization of Foster Families for Equality & Reform*
431 U.S. 816 (1977)............................................................................... 7

*Thomas v. Cty. of Camden*, 386 N.J. Super. 582 (App. Div. 2006).............................. 11

*Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011)................................. 4

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)............................................. 5

*Zahorian v. Russel Fitt Real Estate Agency* 62 NJ 399, 412 (1973)............................. 11

**Statutes**

N.J.S.A. § 9:3-45.2.................................................................................... 7

N.J.S.A. § 9: 6 -8.19a................................................................................. 7

N.J.S.A. 10:5-5 (1)..................................................................................... 11

N.J.S.A. § 10:6-1....................................................................................... 5

42 U.S C. § 1983 ...................................................................................... 5

## PRELIMINARY STATEMENT

Plaintiffs have filed a complaint against the State of New Jersey and various employees of the State Division of Child Placement and Permanency. The complaint alleges pervasive discrimination against the Defendants by these various employees acting both personally and in their official capacity. The Plaintiffs further allege that the discrimination was because of their deeply held religious beliefs. This discrimination culminated in a foster child being taken from the Plaintiffs, their being denied the opportunity to adopt the child and the Plaintiffs being suspended from the foster care system. The discrimination manifested itself in the actions of the Defendants while they were performing administrative, investigative and other functions. While there may not be a right to be a foster parent, or to adopt a child, there is a constitutional right to participate in the system free from discrimination because of one's religious beliefs. Plaintiffs do not seek to force the State to allow them to adopt a specific child but seek the right to participate in the Foster Care system moving forward without being discriminated against for their beliefs.

## STATEMENT OF FACTS

The Plaintiffs, Michael and Jennifer Lasche are Foster Parents licensed by the State of New Jersey. They are devout Christians who hold to traditional values and beliefs about family, marriage and sex. Plaintiffs had Fostered children prior to the events set forth herein. Jennifer Lasche is also a former foster child who was adopted by her Foster Parents. See Plaintiffs Complaint attached as exhibit A to the certification of Michael P. Laffey hereinafter referred to as the "Complaint" at ¶ 1

1

The various individuals named in the complaint are all employees or agents of the New Jersey State Division of Child Placement and Permanency ("DCP&P"). They are sued in their official and personal capacities. Complaint ¶ 1-7

On or about September 1, 2017, the defendants Kyle Higgins and Katie Epperly called the Plaintiffs about two girls being removed from a foster home and asked if Plaintiffs would take them in. The girls were ages 13 (hereinafter referred to as "Foster child 1") and 10 (hereinafter referred to as "Foster child 2"). Plaintiffs agreed to the placement. Foster Child 2 was subsequently removed from the home with the agreement of all parties. This occurred prior to the start of the discriminatory acts alleged in the complaint. Foster Child 1 was the oldest of five siblings placed in foster care. Complaint ¶ 8

During the placement, Kyle Higgins advised the Plaintiffs that the girls' cases were moving towards adoption and that the natural father's rights were already terminated. Complaint ¶ 9

In October of 2017, during the monthly visit, Kyle Higgins advised Plaintiffs that the case is moving towards adoption and that they would have the first choice to adopt the girls. Complaint ¶ 10

In November of 2017, Plaintiffs were advised that the natural mother had surrendered her parental rights and that the children were now free for adoption. Complaint ¶ 11

In December of 2017, Kyle Higgins met with the Plaintiffs and informed them that they were in consideration for adoption. Complaint ¶ 12

Thereafter the Plaintiffs engaged in discriminatory acts against the Plaintiffs based on the Plaintiffs religious beliefs about homosexuality. Those acts of discrimination and which manifest the discriminatory intent of the Defendants include;

2

- Hiding information about other prospective parents for the child while sharing that same information with the Foster Parents of the child's siblings. Complaint ¶ ¶13,14,15

- Interrogating and badgering the foster Child about her and religious beliefs and the religious beliefs of her foster Family. Complaint ¶ 20,22,24,25

- Statements made that the Foster Child would need Psychiatric care because she shared the religious beliefs of the Defendant. Complaint ¶ 29

- There disregard for the wishes of the Foster Child and the Foster Childs best interests Complaint ¶ 21,30,32,33.

- The denial of Plaintiffs rights granted by Statute to address the Judge at the hearing about the Foster Childs continuing to live with Plaintiff's which prevented them from addressing any attacks on them or their religious beliefs. Complaint ¶ 31

- The Plaintiffs being suspended from the Foster Care system because of their religious beliefs and the failure of the Defendants or some of them from advising Plaintiffs that they were suspended as Foster Parents. This was a violation of the Rule and regulations and / or procedures of the DCP&P. Complaint ¶ 34, 35, 36.

Plaintiffs have filed the Complaint in this action seeking damages and attorney's fees on some of the counts but also seeking injunctive relief. Plaintiffs are not seeking to overturn any determinations made regarding the Foster Child as it would be unfair to subject a child who has already suffered a great deal too continued uncertainty as to her fate because of litigation. The injunctive relief that the Defendants seek is to be re-instated as Foster Parents and to participate

in the system going forward without being subject to religious discrimination and prejudice by the employees of the DCP&P.

## LEGAL ARGUMENT

### POINT I

**PLAINTIFFS CLAIMS DO NOT INFRINGE UPON THE DEFENDANTS SOVERIEGN IMMUNITY**

It has long been held that a suit that seeks injunctive relief against individuals acting in their official capacity as state officers that seeks injunctive relief does not violate the Eleventh Amendment, see *Ex Part Young* 2019 US 123 (1908). Nor does a claim for attorney fees connected to the prospective relief requested violate the Eleventh Amendment, see *Hutto v. Finney* 437 US 678 (1979), see also *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, (2011). In *Frew v. Hawkins*, 540 U.S. 431, 437 (2004) the Court stated;

> To ensure the enforcement of federal law the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Ex parte Young*, supra. This standard allows courts to order prospective relief, see *Edelman v. Jordan*, 415 U.S. 651, 39 L. Ed. 2d 662, 94 S. Ct. 1347 (1974); *Milliken v. Bradley*, 433 U.S. 267, 53 L. Ed. 2d 745, 97 S. Ct. 2749 (1977), as well as measures ancillary to appropriate prospective relief, *Green v. Mansour*, 474 U.S. 64, 71-73, 88 L. Ed. 2d 371, 106 S. Ct. 423 (1985).

Plaintiffs' complaint sets forth a pattern of discriminatory conduct by the employees of the DCP&P because of their religious beliefs. They seek injunctive relief reinstating them as foster parents and that they be permitted to fully participate in the foster care system and be considered as candidates to adopt children free of that discriminatory conduct. To the extent that Plaintiffs seek injunctive relief against the individual Defendant's acting in their official capacity it does not violate the 11th Amendment and this Court has jurisdiction to hear this matter.

## POINT II

## BY REMOVING THIS CASE TO FEDERAL COURT THE DEFENDANTS HAVE WAIVED THEIR SOVERIEGN IMMUNITY DEFENSE

In *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) the Supreme Court ruled that when a State removes a case to Federal Court that acts as a waiver of their 11th Amendment sovereign immunity defense.

This case was originally filed in State Court and was removed to the Federal Court by the Defendants. As such the defense of sovereign immunity is unavailable to them.

## POINT III

## THE INDIVIDUAL DEFENDANTS ACTING IN THEIR OFFICIAL CAPACITY ARE "PERSONS" UNDER § 1983 BECAUSE OF THE NATURE OF THE RELIEF PLAINTIFFS SEEK.

As was the case in Point I the answer as to whether a defendant sued in their official capacity is a person under 42 U.S C. § 1983 depends on the type of relief sought. As set forth previously the Plaintiffs are seeking injunctive relief against the individuals in their official capacity.

In *Hafer v. Melo*, 502 U.S. 21 (1991) the Supreme Court stated that a state official in his or her official capacity, when sued for injunctive relief, would be a person under 42 U.S.C.S. § 1983 because official-capacity actions for prospective relief are not treated as actions against the state, see also *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989).

As Defendants correctly point out in their brief the New Jersey Civil Rights Act (NJCRA) N.J.S.A. § 10:6-1 uses the same definition of person as § 1983. Therefore claims

brought pursuant to the NJCRA against the individuals in their official capacity that seek injunctive relief would also survive.

## POINT IV

### WHILE PLAINTIFFS MAY NOT HAVE A CONSTITUTIONAL RIGHT TO ADOPT A SPECIFIC CHILD THEY DO HAVE A RIGHT TO PARTICIPATE IN THE FOSTER CARE AND ADOPTION SYSTEM WITHOU BEING SUBJECT TO PREJUDICE AND DISCRIMINATION.

Plaintiff contends and they will prove at trial that <u>all</u> of the adverse actions taking against them by the employees and agents of the DCP&P where the result of animus against their deeply held religious belief that homosexuality is a sin. To be clear the claim is that the adverse actions are not based on what the Plaintiffs did or what they said but merely by what they believe. While it is true that the Courts have generally looked at claims of a constitutional right to adopt with skepticism it is also clear that that the State does not have a right to discriminate against someone based on their beliefs and I do not believe that the State is taking a position contrary to that statement. This case is about more than one adoption. This case is about a pattern of discrimination against the Plaintiffs. That pattern includes actions taken to convince the Foster Child to change her mind about where she wanted to be placed and ultimately going against the child's best interests and her wishes in order to deny my client the right to adopt[1], Ignoring procedural rights and failing to give notice to the Plaintiffs that they were entitled to have as a matter of law, withholding information shared with other Foster parents and ultimately suspending Plaintiffs from the foster care system.

---

[1] It should be noted that these actions are also a grievous violation of a young girls religious freedom and it is unfortunate that this violation was by the State charged with protecting her interest and rights and that as a result there is no one to advocate before this Court for her rights.

6

Whatever the opportunity to adopt is labeled, a court cannot disqualify someone from adopting solely on religious grounds without violating that person's rights to free exercise of his religious beliefs. *In re "E",* 59 N.J. 36, 53 (1971)

In legalizing same sex marriage the Supreme Court stated;

> It must be emphasized that religions, and those who adhere to religious doctrines, may continue to advocate with utmost, sincere conviction that, by divine precepts, same-sex marriage should not be condoned. The First Amendment ensures that religious organizations and persons are given proper protection as they seek to teach the principles that are so fulfilling and so central to their lives and faiths, and to their own deep aspirations to continue the family structure they have long revered.

*Obergefell v. Hodges,* 135 S. Ct. 2584, 2607, 192 L.Ed.2d 609, 634 (2015).

There can be no question that religious belief, even belief that may be currently unpopular, cannot be a bar to being a foster parent or adopting a child and that when people participating in the foster care system are discriminated against on the basis of religion it is a violation of their First Amendment rights.

Plaintiffs also allege that they were denied procedural Due Process Rights in not being advised of their statutory right to appear and make a statement at the hearing which resulted in the removal of the Foster Child from their home and they were not given notice of their suspension from the Foster Care system.

N.J.S.A. § 9: 6 -8.19a affords resource parents notice of Court Hearings and the opportunity to appear and provide a statement on any issue involving the child in a pending N.J.S.A. Title 9 action . N.J.S.A. § 9:3-45.2 gives the same right to resource parents in adoption proceedings. "These statutes allow resource parents the **right** (*emphasis add.*) to voice their objections to a proposal to remove a child from their care" *New Jersey Div. of Youth and Family Services v D.P.* 422 N.J. Super 583 (App. Div. 2011).

7

Further while ultimately not addressing the issue with finality the Supreme Court in *Smith v. Organization of Foster Families for Equality & Reform* 431 U.S. 816 (1977) has suggested that there may be a minimal due process requirement that Foster Parents are entitled to when a child is removed from their custody.  The Court did note that any such right would be attenuated where the purpose of the removal from the Foster Family is to return the child to his or her natural parents. *Id.* at 847, however that is not the case currently before the Court.

Where the Court to disagree with the proposition that these "rights " that the State of New Jersey has clearly enunciated for foster parents rise to a level entitled to constitutional protection. Plaintiff contends that the Defendants ignoring these laws and regulations with regard to Plaintiffs is part and parcel of their discriminatory actions.

## POINT V

### DEFENDANTS DO NOT HAVE ABSOLUTE IMMUNITY FOR EACH AND EVERY ACT OF DISCRIMINATION SET FORTH IN THE COMPLAINT OR FOR THE PATTERN OF DISCRIMINATION THEY ENGAGED IN.

While Defendants are correct that they are immune from damages for actions they took in connection with the hearing that removed the foster child from Plaintiffs custody, not all the actions they took are subject to that immunity, nor does that defeat Plaintiff's claim for injunctive relief.

The reasoning set forth in *Ernst v. Child and Youth Services of Chester County* 108 F.3d 486 (3d Cir.1997) is based on the Supreme Court's ruling in *Imbler v. Pachtman*, 424 U.S. 409, (1976). The Court in *Imbler* ruled that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for *damages* (emphasis add.) under § 1983." *Id.* at 431. The primary relief Plaintiffs seek is injunctive.

8

Further social workers are absolutely immune only when they are acting in their capacity as legal advocates initiating Court actions or testifying under oath – not when they are performing administrative, investigative or other functions. *B.S. v. Somerset County*, 704 F.sd 250 (2013). Arguably, the acts other than the recommendation to the Court that DCP&P engaged in fall outside the grant of immunity and clearly at least some of their acts are not immune, such as the suspension of the Plaintiffs as foster parents.

In a similar vein the Defendants argue in Point VI of their brief that the Defendants cannot be liable for a decision made a Judge. Once again this argument ignores the fact that seeking removal of the Foster Child from their home is not the only act of discrimination that the Defendants have been accused of. It also ignores the fact that while Plaintiffs may have nominal damages for some of the other acts of discrimination alleged, the thrust of this lawsuit is to prove that the Defendants discriminated against the Plaintiffs based on their religious beliefs, have the Plaintiffs reinstated as foster parents and make sure that the Plaintiff's rights are not violated in the future. The Plaintiffs are seeking to fully participate in the foster care system free from religious discrimination.

### POINT VI

**PLAINTIFF'S ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE LAW CLEARLY ESTABLISHES THAT THE STATE CAN NOT DISCRIMINATE AGAINST SOMEONE BASED ON THEIR RELIGIOUS BELIEFS.**

Plaintiffs correctly state the legal standard for determining whether qualified immunity applies. However, in order for the Defendants argument that they are entitled to qualified immunity to prevail this Court would have to believe that there was not a clearly established right to be free from governmental discrimination because of your religious beliefs. The

9

Plaintiffs seem to realize this as they talk about the "Foster Parents / potential adoptive parents views on sexuality" (Plaintiff brief p. 32) and ignore the fact that it is not a mere viewpoint we are discussing but a deeply held religious belief. To be clear Plaintiffs contend they were discriminated against merely for holding this belief not for any action they took or failed to take connected to this belief.

Officials can still be on notice that their conduct violates established law even in novel factual circumstances. The U.S. Supreme Court has expressly rejected a requirement that previous cases be "fundamentally similar." *Hope v. Pelzer*, 536 U.S. 730, 733, (2002) see also *Ae Ja Elliot-Park v. Manglona*, 592 F.3d 1003, 1008-09 (9th Cir. 2010). (This is especially true in equal protection cases because the non-discrimination principle is so clear. "The constitutional right to be free from such invidious discrimination is so well established and so essential to the preservation of our constitutional order that all public officials must be charged with knowledge of it).

There are numerous cases that would lead a reasonable state caseworker to the conclusion that it is impermissible to discriminate against someone on the basis of their religious beliefs. In *Church of Lukumi Babalu Aye v. City of Hialeah,* 508 U.S. 520, 533, (1993) the Court held that a law targeting religious beliefs as such is never permissible. More recently the Supreme Court held in *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1720, (2018) that "The government, if it is to respect the Constitution's guarantee of free exercise, cannot impose regulations that are hostile to the religious beliefs of affected citizens and cannot act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices. The Free Exercise Clause bars even subtle departures from neutrality on matters of religion." Further as pointed out above the New Jersey State Supreme Court held in 1971 in the

10

case *In re "E", Supra.* that discrimination on the basis of religious belief in making adoption decisions is impermissible. Finally Justice Kennedy writing for the Court in *Obergefell Supra.* at 2607 discussed how beliefs just like the ones in question in the present case are legitimate religious beliefs that the government is required to respect.

Taking the facts as stated by the Plaintiffs in the complaint the Defendants have not shown they are entitled to qualified immunity.

## POINT VII

### THE DCP&P IS A PLACE OF PUBLIC ACCOMODATION SUBJECT TO THE NEW JERSEY LAW AGAINST DISCRIMINATION.

The Defendants state that Count 1 of Plaintiffs Complaint alleging that the actions of the Defendants violated the New Jersey Law against Discrimination (LAD) because the DCP&P is not a public accommodation as defined by the Statue and they point to the definition found in N.J.S.A. 10:5-5 (1).

However, in *Thomas v. Cty. of Camden*, 386 N.J. Super. 582 (App. Div. 2006) the Appellate Division held that government agencies are subject to the LAD. This case involved an LAD claim against Camden County and its Department of Public Safety. The Court first staed that N.J.S.A. 10:5-5 (1). Provides a non-exhaustive list of public accommodations, *Id.* at 589. See also *BSA v. Dale* 530 U.S. 640, 656-57 (2000), *Zahorian v. Russel Fitt Real Estate Agency* 62 NJ 399, 412 (1973).

The Court went on to say that the goal of the act is to eradicate the "cancer of discrimination" and must be broadly interpreted to further its purposes *Id.* at 590. Quoting *Ptaszynski v. Unaneme,* 371 N.J. Super. 333, 347 (App. Div. 2004) the Court noted that "It would indeed lead to an anomalous result if private organizations with close ties to government

11

agencies were places of public accommodation because of those ties, while the government agency itself was not."

The Court, in concluding that government agencies are public accommodations for the purposes of the LAD stated that " If the County of Camden and it's executive units are not subject to the LAD, It's employees would be free to discriminate a prospect we could simply not tolerate', *Id.* at 334. See also *Dale v. BSA*, 160 N.J. 562, 593 n.7 (1999) (New Jersey governmental entities are, of course, bound by the LAD.)

While there is a District Court Case that reaches a different conclusion, *Doe v. Div. of Youth & Family Servs.*, 148 F. Supp. 2d 462 (D.N.J. 2001), I would submit that the later decision of the State Appellate Division is more persuasive authority on the question on how to interpret a state Law against Discrimination.

## CONCLUSION

For the reasons set forth herein Defendants motion to dismiss Plaintiffs complaint should be denied.

Date: March 4, 2019

_____
Michael P. Laffey
Attorney for Plaintiffs