# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

MICHAEL LASCHE and JENNIFER LASCHE,

     Plaintiffs,

    v.

STATE OF NEW JERSEY, ET AL.,

    Defendants

CIVIL ACTION NO.
3:18-cv-17552-FLW-TJB

## REPLY BRIEF IN SUPPORT OF
## MOTION TO DISMISS

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 116
Trenton, NJ 08625
(609)376-2787
Attorney for Defendants,
State of New Jersey, the Division of Child Placement
and Protection, Kyle Higgins, Mary Lippencot, Katie
Epperly, and Janelle Clark

ROBERT J. McGUIRE (ID: 046361992)
DEPUTY ATTORNEY GENERAL
 On the Brief

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ................................................................................................................ 3

    POINT I

        DEFENDANTS HAVE SOVEREIGN IMMUNITY
        FROM PLAINTIFF'S CLAIMS UNDER § 1983 AND
        THE NJCRA ................................................................................................ 3

    POINT II

        PLAINTIFF'S §1983 AND NJCRA CLAIMS SHOULD
        BE DISMISSED AGAINST DCPP AND
        DEFENDANTSS SUED IN THEIR "OFFICIAL
        CAPACITY" BECAUSE THOSE DEFENDANTS ARE
        NOT "PERSONS" UNDER § 1983 OR THE NJCRA ........................... 4

    POINT III

        FOSTER PARENTS DO NOT HAVE PROTECTED
        CONSTITUTIONAL RIGHTS WITH RESPECT TO
        DECISIONS REGARDING THE PLACEMENT OF
        FOSTER CHILDREN ................................................................................. 4

    POINT IV

        THE INDIVIDUAL DEFENDANTS HAVE
        ABSOLUTE IMMUNITY WITH RESPECT TO ANY
        ACTIVITIES RELATED TO THE JUDICIAL
        PROCEEDING AT WHICH THE COURT MADE THE
        DISPUTED CUSTODY DETERMINATION ...................................... 6

POINT V

    AT MINIMUM, DEFENDANTS HAVE QUALIFIED
    IMMUNITY AS TO THE LASCHES' CLAIMS ..................................... 7

POINT VI

    DEFENDANTS DID NOT REMOVE FOSTER CHILD
    1 FROM THE LASCHES' CARE – A COURT DID --
    AND DEFENDANTS ARE NOT LEGALLY LIABLE
    FOR THE COURT'S DECISION ............................................................. 9

POINT VII

    DCPP IS NOT A "PLACE OF PUBLIC
    ACCOMODATION," AND THERFORE, PLAINTIFF'S
    NJLAD CLAIM SHOULD BE DISMISSED, AND
    PLAINTIFFS CANNOT STATE A CLAIM FOR
    RELIGIOUS DISCRIMINATION ......................................................... 10

CONCLUSION .............................................................................................. 12

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Ashcroft v. al-Kidd*, 563 U.S. ___, ___, 131 S.Ct. 2074 (2011) .........................................7, 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 3, 7

*Doe v. Division of Youth & Family Services,* 148 F. Supp.2d 462 (D.N.J. 2001)................. 10

*Elwell v. Byers*, 699 F.3d 1208, 1214-15 (10th Cir. 2012) ....................................................... 5

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................................. 7

*Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002)................................ 3

*Lombardo v.Pennsylvania Dep't of Public Welfare,* 540 F.3d 190 (3d Cir. 2008) .................... 3

*Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) ................................................................... 5, 6

*Pearson v. Callahan*, 555 U.S. 223 (2009).............................................................................. 7

*Rodriguez v. McLoughlin*, 214 F.3d 328, 339-41 (2d Cir. 2000) ............................................. 5

*Sandlin v. Conner*, 515 U.S. 472, 483-84 & n.5 (1995)........................................................... 5

*Saucier v. Katz*, 533 U.S. 194 (2001) ...................................................................................... 7

*Stephany v. Wagner*, 835 F.2d 497, 500 (3d Cir. 1987) .......................................................... 6

### Statutes

42 U.S. § 1983 ................................................................................................................ *passim*

N.J. Stat. Ann. 9:6-8.19a .................................................................................................... 5, 6

## PRELIMINARY STATEMENT

Plaintiffs, Michael and Jennifer Lasche ("the Lasches"), make a number of concessions in their "opposition" to defendants motion to dismiss, which reveal that this case has essentially been whittled down to an assertion that the Lasches are entitled to injunctive relief that they should not be precluded from serving as foster parents in the future, based on their personal views about homosexuality and same-sex unions. The Lasches now concede that they do not seek the return of Foster Child 1 to their care.  They concede that their claims for monetary damages § 1983 and the NJCRA against defendants in those defendants' official capacity are precluded.  They concede the absence of any authority that has ever held that a constitutional right exists to serve as a foster parent.   Viable claims under § 1983 (and the NJCRA, which is interpreted in the same manner as § 1983) require that claimants allege a deprivation of a constitutional right.   The Lasches also appear to concede that any statements or recommendations that defendants alleged made to a court with respect to custody decisions related to Foster Child 1 are protected by prosecutorial immunity, while suggesting that a claim may still lie with respect to their request to serve as foster parents in the future (although the Lasches fail to demonstrate that they have taken any steps at the state level to address the alleged suspension of their license to serve as foster parents and thus this court should decline to consider this unripe claim).

Further, although the Lasches attempt to cast this case as one concerning discrimination against the Lasches based on their "religious beliefs," the facts – even as

alleged in the complaint – do not demonstrate that any defendant cited the Lasches' religious denomination as the basis for any actions. Rather, the allegations indicate that defendants allegedly developed and presented information regarding the Lasches' views and statements to the foster children in their care regarding homosexuality, which was of considerable relevance given the circumstances related to those foster children, who were being considered for foster care placement and potential adoption (with their three other siblings) with a same-sex couple. Nor does this case involve any infringement of the Lasches' First Amendment rights to hold or speak publicly about their own religious beliefs.

To the extent, however, that the Lasches' personal views on homosexuality and same-sex unions (whether those views are held for secular reasons or because of the tenets of the Lasches' religious denomination) are relevant to placement of children in their care, due to potential placement or adoption of foster children within the Lasches' care by same-sex couples or due to the potential adverse reaction if a child within the Lasches' care ever demonstrated any interest in a same-sex romantic relationship, no colorable claim for "religious" discrimination can be asserted.

2

## ARGUMENT

## POINT I

## DEFENDANTS HAVE SOVEREIGN IMMUNITY FROM PLAINTIFF'S CLAIMS UNDER § 1983 AND THE NJCRA

Upon review of the authority cited by plaintiffs, defendants concede that defendants have waived only the immunity from suit in this court as to plaintiffs' claims. However, the removal does not waive all other substantive immunities under federal or state law.

The Supreme Court has found waiver by removal only when a state voluntarily removes state law claims filed in state court to federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 619–24 (2002). However, "while voluntary removal waives a State's immunity from suit in a federal forum, the removing State retains all defenses it would have enjoyed had the matter been litigated in state court, including immunity from liability." *Lombardo v. Pennsylvania Dep't of Public Welfare*, 540 F.3d 190, 194 (3d Cir. 2008.) In other words, state defendants retain "defenses provided by [state] sovereign immunity law." *Id.* at 200

3

## POINT II

### PLAINTIFF'S §1983 AND NJCRA CLAIMS SHOULD BE DISMISSED AGAINST DCPP AND DEFENDANTSS SUED IN THEIR "OFFICIAL CAPCITY" BECAUSE THOSE DEFENDANTS ARE NOT "PERSONS" UNDER § 1983 OR THE NJCRA.

Plaintiffs concede that they cannot pursue a claim for monetary damages against DCPP or defendants in their official capacity under 42 U.S. § 1983 because those defendants are not "persons" for purposes of claims for monetary damages under that statute.  *See* Opposition Brief at 5-6.   To the extent that plaintiffs suggest that their claims for injunctive relief are not barred, those claims still must be barred as to Higgins, Epperly and Clark "in their official capacities" because plaintiffs seek injunctive relief in the form of an injunction with respect to their license to serve as foster parents, but there is no indication that those defendants have any authority to issue or deny such a license if an injunction were to be issued.

## POINT III

### FOSTER PARENTS DO NOT HAVE PROTECTED CONSTITUTIONAL RIGHTS WITH RESPECT TO DECISIONS REGARDING THE PLACEMENT OF FOSTER CHILDREN.

The Lasches make a major concession – acknowledging that no court has ever held persons have any constitutional right to serve as foster parents -- and yet ask this court to allow claims under § 1983 and the NJCRA, which **require** the assertion that a constitutional deprivation.  As demonstrated in defendants' moving brief, numerous

4

courts have found that potential fosters parents lack any protected constitutional rights to serve in that role.  The absence of a protected constitutional right is fatal to all claims under § 1983 and the NJCRA.

As expected, the Lasches note that certain state statutes purport to give foster parents the right to notice and a right to be heard at certain proceedings with respect to decisions related to foster children, citing N.J. Stat. Ann. 9:6-8.19a.  As defendants demonstrated in their initial moving papers, several federal appeals courts have held that the existence of a statutory requirement for notice of a hearing to foster parents and provision of an opportunity to be heard – without a statutory provision that mandates a result of a placement hearing or mandates a particular decision based on such information -- does not create any constitutional rights for a foster parent.  *See Elwell v. Byers*, 699 F.3d 1208, 1214-15 (10th Cir. 2012), and *Rodriguez, v. McLoughlin*, 214 F.3d 328, 339-41 (2d Cir. 2000). .

As the court in *Elwell* noted, if "state law creates a mandatory procedure but does not guarantee a particular substantive outcome, it does not confer a protected liberty interest." *Elwell*, 699 F.3d at 1214 (citing *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983), *abrogated on other grounds*, *Sandlin v. Conner*, 515 U.S. 472, 483-84 & n.5 (1995)).  Similarly, this Circuit has plainly held that even the creation of certain procedural rights in state statutes does not give rise to a constitutional right, stating: "[T]he State may choose to require procedures for reasons other than protection against deprivation of substantive rights," and if the state does no more than put certain procedures in place, "the State

5

does not create an independent substantive right." *Stephany v. Wagner*, 835 F.2d 497, 500 (3d Cir. 1987) (quoting *Olim*, 461 U.S. at 250)).

The Lasches cannot show that the New Jersey statutory scheme requires a particular outcome based on a foster parent's input.  As such, the fact that they claim not to have afforded notice or a right to be heard pursuant to N.J. Stat. Ann. 9:6-8.19a does not qualify as the constitutional deprivation that they were required to allege for a valid claim under § 1983 and the NJCRA.

## POINT IV

### THE INDIVIDUAL DEFENDANTS HAVE ABSOLUTE IMMUNITY WITH RESPECT TO ANY ACTIVITIES RELATED TO THE JUDICIAL PROCEEDING AT WHICH THE COURT MADE THE DISPUTED CUSTODY DETERMINATION

The Lasches have not challenged the argument that the individual have absolute immunity with respect to any actions connected to gathering information for, or presenting information to, the family court judge who then made a determination as a part of a judicial proceeding that Foster Child 1 should be removed from the Lasches' custody.  See Opposition Brief at 9.  As such, it is undisputed that all claims related to those allegations should be dismissed.

## POINT V

## AT MINIMUM, DEFENDANTS HAVE QUALIFIED IMMUNITY AS TO THE LASCHES' CLAIMS.

Having conceded that there is no constitutional right to serve as a foster parent, the Lasches cannot provide any viable argument why the defendants do not, at minimum, have qualified immunity from plaintiffs' claims. When a defendant in a § 1983 action claims qualified immunity, a two-part inquiry must be undertaken. *See Pearson*, 555 U.S. at 232; *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court is required to consider whether the plaintiff's allegations would allege any violation of any constitutional right at all – and plaintiffs have failed to demonstrate a right to serve as a foster parent, *see Pearson*, 555 U.S. at 232 – and the court additionally must determine whether the constitutional right at issue was "clearly established" at the time of the alleged misconduct. *Id.*

To determine whether a right was "clearly established," the question is whether, "at the time of the challenged conduct, the contours of a right [we]re sufficiently clear that every reasonable official would have understood that what he [wa]s doing violate[d] that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation and quotes omitted); *Harlow v. Fitzgerald*, 457 U.S. 800, 817-19 (1982). The Supreme Court has held that absent "controlling authority," a "robust consensus of cases of persuasive authority" must have placed the statutory or constitutional question confronted by the officials "beyond debate." *al-Kidd*, 563 U.S. at 741.

To overcome the Defendants' claim of qualified immunity, the Lasches must show the existence of clearly established law that provided that consideration of a foster parent's or potential adoptive parent's views on sexuality in making recommendations regarding custody or adoption violates a clearly established constitutional right.  As defendants have demonstrated, an overwhelming amount of judicial authority exists for the proposition that foster parents lack any constitutional rights with respect to custody determinations regarding foster children in their care.

The Lasches attempt to argue against a finding if qualified immunity by alluding to a vague constitutional right to "freedom of religion," but the Supreme Court and other courts have made clear that generalized contentions regarding "clearly established" rights will not suffice to defeat qualified immunity.  The Supreme Court has admonished that, when analyzing qualified immunity, courts should not "define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742; *see also Kisela v. Hughes*, 584 U.S. __, 138 S. Ct. 1148, 1152 (2018) (*per curiam*); *Mullenix v. Luna*, 577 U.S. __, 136 S. Ct. 305, 308 (2015) (*per curiam*). Although a plaintiff need not produce a case "directly on point," nonetheless existing precedent must have placed the constitutional question "beyond debate." *Mullenix,* 136 S. Ct. at 308 (quoting *al-Kidd*, 563 U.S. at 741).

Assuming the truth of the Lasches' contention that their license to serve as foster parents was suspended because of the Lasches' personal belief that homosexuality is a sin (solely for the purposes of this motion and not conceding that this allegation is

actually true), the Lasches cannot point to a single prior judicial precedent – let alone "clearly established" authority or a "robust consensus" of persuasive authority – that has held that similar conduct violates a constitutional right when a foster child might potentially be adopted by a same-sex couple or when the foster parents at issue has stated that they cannot predict how they will respond if a foster child demonstrated an interest in a potential same-sec romantic relationship.

Therefore, at minimum, defendants have qualified immunity from the claims against them.

## POINT VI

### DEFENDANTS DID NOT REMOVE FOSTER CHILD 1 FROM THE LASCHES' CARE – A COURT DID -- AND DEFENDANTS ARE NOT LEGALLY LIABLE FOR THE COURT'S DECISION

Defendants noted that any claims related to the family court's decision relative to the placement of Foster Child 1 had to be dismissed because the family court – and not defendants – ultimately made any such decision, apparently based on the view that this decision was in the best interest of Foster Child 1.   The Lasches do not challenge that legal argument, stating only that their claims in this lawsuit are not limited to the placement decision.

This is an additional reason why all claims in this case related to the placement decision must be dismissed.

9

## POINT VII

**DCPP IS NOT A "PLACE OF PUBLIC ACCOMMODATION," AND THERFORE, PLAINTIFF'S NJLAD CLAIM SHOULD BE DISMISSED, AND PLAINTIFFS CANNOT DEMONSTRATE A CLAIM FOR DISCRIMINATION BASED ON THEIR RELIGION.**

The basis for the Lasches' claim under NJLAD is the plainly erroneous assertion that DCPP is a "public accommodation" under that statute. Plaintiffs concede that DCPP does not fall within the numerous examples of a "public accommodation" set forth in the relevant statute, but argues that certain state court decisions have applied a broader construction of that term to agencies other than DCPP (or DCPP's predecessor), while asking this court to ignore a prior decision from this judicial district that specifically held that DYFS (the predecessor to DCPP) is not a "public accommodation." *Doe v. Division of Youth and Family Services,* 148 F.Supp.2d 462, 496 (D.N.J.2001)(noting that DYFS, while state agency, did not resemble any other places of public accommodation mentioned within statute and does not engage in "broad solicitation in an effort to attract the public to its organization.").

The analysis in *Doe*, which is directly applicable to the agency in question, is better reasoned and more persuasive cogently explained why it would anomalous to hold that this agency is a "public accommodation:"

> Neither the State of New Jersey nor its agencies are listed entities in NJLAD. While the list of places of public accommodation in the statute is not intended to be

10

exhaustive, the list has been used by New Jersey courts as "a benchmark for determining whether the unlisted entity should be included." *See Dale v. Boy Scouts of America,* 160 N.J. 562, 734 A.2d 1196, 1213 (1999) (citing *Board of Chosen Freeholders v. State,* 159 N.J. 565, 732 A.2d 1053 (1999)), *rev'd on other grounds,* 530 U.S. 640, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000). A brief review of the listed entities leads to the inescapable conclusion that none of the listed entities even remotely resemble DYFS or any other State agency. The list includes taverns, hotels, summer camps, retail shops, restaurants, garages, bathhouses, music halls, pool halls, libraries and schools. *See* N.J. Stat. Ann. § 10:5–5(*l*). Certainly, had the legislature intended to include State agencies within NJLAD's public accommodation provision, it would have included at least one term reflecting that intent.

Moreover, even applying the tests employed by New Jersey courts to determine whether an unlisted entity is considered a place of public accommodation under NJLAD, DYFS does not fall within the statutory definition. One key factor courts have looked to is whether the entity engages in "broad solicitation" in an effort to attract the public to its organization. *See Dale,* 734 A.2d at 1210; *National Org. for Women v. Little League Baseball, Inc.,* 127 N.J.Super. 522, 318 A.2d 33, 37–38 (1974), *aff'd,* 67 N.J. 320, 338 A.2d 198 (1974). It cannot be said that a State child welfare agency charged with enforcing anti-child abuse laws broadly solicits the public to partake in its services.

Thus, the Court concludes that DYFS is not place of public accommodation under NJLAD and, therefore, Young is not an employee of a place of public accommodation liable under the act.

[*Id.* at 496.]

Thus, DCPP should not be considered a public accommodation.

Moreover, even if DCPP were a public accommodation, the NJLAD claim still fails because decisions as any decisions made as to the Lasches' service as foster parents

11

cannot be attributed to the Lashes' chosen religion.  Instead, as shown in the remainder of defendants' moving papers, to the extent that the Lasches have a particular view as to sexuality, that information was taken into account for a valid, non-discriminatory purpose, because those views were relevant to consideration of placement decisions related to a foster child with them, not based on religion, but based on the best interests of such a child.    Indeed, it must be noted that – had DCPP refused to consider the same-sex couple from Illinois as potential adoptive parents for Foster Child 1, based solely on those persons' sexuality (as the Lasches suggest should have been done based on the Lasches' own views on sexuality) – that decision itself would be a clear violation of New Jersey statutes and decisional law that prohibits discrimination based on sexual orientation.

Therefore, the Lasches' NJLAD claim should be dismissed.

## **CONCLUSION**

Based on the foregoing and the reasons set forth in defendants' initial moving papers, Plaintiffs' Complaint should be dismissed.

Respectfully submitted,

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By:  /s/ Robert J. McGuire
Robert J. McGuire (046361992)
Deputy Attorney General

DATE: March 25, 2019

12