# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

MICHAEL LASCHE and JENNIFER LASCHE,

     Plaintiffs,

    v.

STATE OF NEW JERSEY, ET AL.,

    Defendants

CIVIL ACTION NO.
3:18-cv-17552-FLW-TJB

---

## BRIEF IN SUPPORT OF
## MOTION TO DISMISS AMENDED COMPLAINT

---

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 116
Trenton, NJ 08625
(609)376-2787
Attorney for Defendants,
State of New Jersey, the Division
of Child Placement and Protection, Kyle Higgins,
Mary Lippencot, Katie Epperly, and Janelle Clark

ROBERT J. McGUIRE (ID: 046361992)
DEPUTY ATTORNEY GENERAL
 On the Brief

# TABLE OF CONTENTS

**Page No.**

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS .............................................................................. 4

STANDARD OF REVIEW ............................................................................. 15

    A.    Motion to dismiss the complaint for lack of subject matter
           jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) ...................................... 15

    B.    Motion to dismiss the complaint for failure to state a claim
           upon which relief can be granted pursuant to Fed. R. Civ.
           P. 12(b)(6) ............................................................................. 16

ARGUMENT .............................................................................................. 18

    POINT I

           THE LASCHES' EQUAL PROTECTION CLAIM
           FAILS BECAUSE THEY HAVE NOT INCLUDED A
           PLAUSIBLE FACTUAL BASIS FOR THE ASSERTION
           THAT THEY WERE DISCRIMINATED AGAINST
           BECAUSE OF THEIR RELIGIOUS BELIEFS ................................... 18

    POINT II

           PLAINTIFFS CANNOT STATE A COGNIZABLE
           FIRST AMENDMENT CLAIM BECAUSE THEY
           CANNOT ESTABLISH THAT DEFENDANTS'
           ALLEGED VIOLATION OF FIRST AMENDMENT
           RIGHTS CAUSED THE REMOVAL OF THE FOSTER
           CHILD OR THE SUSPENSION OF THEIR LICENSE
           TO SERVE AS FOSTER PARENTS ....................................................... 19

POINT III

THE LASCHES HAVE FAILED TO PLEAD THE
REQUIRED ELEMENTS OF A CONSPIRACY CLAIM
UNDER § 1985, AND THAT CLAIM SHOULD BE
DISMISSED ................................................................................. 21

POINT IV

AT MINIMUM, DEFENDANTS HAVE QUALIFIED
IMMUNITY AS TO THE LASCHES' CLAIMS .................................... 23

CONCLUSION .............................................................................. 27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Creighton,*
    483 U.S. 635 (1987) ...................................................................................25, 26, 27

*Anspach v. City of Philadelphia,*
    503 F.3d 256 (3d Cir. 2007) ...................................................................... 19

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011) ...................................................................... 26, 27

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................... 19

*Aulisio v. Chiampi,*
    765 F. App'x 760 (3d Cir. 2019) .................................................... 24

*Bradley v. United States,*
    299 F.3d 197 (3d Cir. 2002) ............................................................ 8

*Brosseau v. Haugen,*
    543 U.S. 194 (2004) ...................................................................... 27

*Brown v. U.S. Steel Corp.,*
    2010 U.S. Dist. LEXIS 115503 (W.D. Pa. Oct. 29, 2010) ......................... 18

*Camero v. Kostos,*
    253 F. Supp. 331 (D.N.J. 1966) ...................................................... 19

*Carswell v. Borough of Homestead,*
    381 F.3d 235 (3d Cir. 2004) .......................................................... 25

*Curley v. Klem,*
    499 F.3d 199 (3d Cir. 2007) .......................................................... 25

*DeFranco v. Wolfe,*
    387 F. App'x 147 (3d Cir. 2010) .................................................... 10

*District of Columbia v. Wesby,*
    138 S. Ct. 577 (2018) ...................................................................... 27

*Farber v. City of Paterson,*
    440 F.3d 131 (3d Cir. 2006)...................................................................... 24

*Farrell v. Planters Lifesavers Co.,*
    206 F.3d 271 ................................................................................. 10, 11

*Flight Sys., Inc. v. Elec. Data Sys.,*
    112 F.3d 124 (3d Cir. 1997)...................................................................... 19

*Gould Elecs., Inc. v. U.S.,*
    220 F.3d 169 (3d Cir. 2000)...................................................................... 18

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ............................................................................... 26

*Jalil v. Avdel Corp.,*
    873 F.2d 701 (3d Cir. 1989)...................................................................... 11

*Luren W. ex rel. Jean W. v. DeFlaminis,*
    480 F.3d 259 (3d Cir. 2007)...................................................................... 10

*Kisela v. Hughes,*
    138 S.Ct. 1148 (2018) ............................................................................ 28

*Mammaro v. N.J. Div. of Child Prot.& Permanency,*
    814 F.3d 164 (3d Cir. 2016).................................................................26, 27

*McLaughlin v. Watson,*
    271 F.3d 566 (3d Cir. 2001)...................................................................... 26

*McNutt v. Gen. Motors Acceptance Corp. of Ind.,*
    298 U.S. 178 (1936) ............................................................................... 18

*Morse v. Lower Merion School Dist.,*
    132 F.3d 902 (3d Cir. 1997)...................................................................... 19

*Mortensen v. First Fed. Sav. & Loan Ass'n,*
    549 F.2d 884 (3d Cir. 1977)...................................................................... 18

*Mullenix v. Luna,*
    136 S. Ct. 305 (2015) .........................................................................26, 27

*Oran v. Stafford,*
    34 F. Supp. 2d 906 (D.N.J. 1999), *aff'd*, 226 F.3d 275 (3d Cir. 2000)...................... 19

*Pearson v. Callahan,*
    555 U.S. 223 (2009) ........................................................................................ 25

*Perano v. Township of Tilden,*
    423 Fed.Appx. 234 (3d Cir. 2011) ...................................................... 20, 21

*Phillips v. Cty. of Allegheny,*
    515 F.3d 224 (3d Cir. 2008) ............................................................................ 7

*Plumhoff v. Rickard,*
    572 U.S. 765 (2014) ........................................................................................ 25

*Reichle v. Howards,*
    566 U.S. 658 (2012) ........................................................................................ 27

*Saucier v. Katz,*
    533 U.S. 194 (2001) .................................................................................. 25, 26

*Smolow v. Hafer,*
    353 F. Supp. 2d 561 (E.D. Pa. 2005) .......................................................... 18

*Startzell v. City of Philadelphia,*
    533 F.3d 183 (3d Cir. 2008) ...................................................................... 8, 20

*Thomas v. Town of Hammonton,*
    351 F.3d 108 (3d Cir. 2003) .......................................................................... 11

*United Bhd. of Carpenters & Joiners v. Scott,*
    463 U.S. 825 (1983) ........................................................................................ 24

*White v. Pauly,*
    137 S. Ct. 548 (2017) ...................................................................................... 26

*Wilson v. Layne,*
    526 U.S. 603 (1999) ........................................................................................ 27

**Rules and Other Authorities**

Fed. R. Civ. P. 12 .......................................................................................................... 18, 19

N.J. Admin Code § 3A:14-4.1(a) ..................................................................................... 5, 11

## PRELIMINARY STATEMENT

Plaintiffs, Michael and Jennifer Lasche ("the Lasches"), who briefly served as foster parents for two young girls (one of whom was later removed from the Lasches' home by consent) have filed an Amended Complaint alleging that the removal of one of those girls ("Foster Child 1") from their care -- by order of a New Jersey family court judge – and cancellation of their license to be potential foster parents, violated their constitutional rights to equal protection and First Amendment rights.  Defendants in this action previously moved to dismiss the original Complaint in this matter, and the Court issued a comprehensive opinion ("Opinion") that dismissed with prejudice nearly all of the Lasches' claims.  The Court dismissed the Lasches' equal protection and First Amendment claims in the original Complaint (and related conspiracy claims) without prejudice, noting the reasons why those claims, as pleaded in the originally complaint, were deficient.   The Court provided the Lasches with an opportunity to assert potentially cognizable claim under those theories in an Amended Complaint.

In the Opinion, the Court took pains to identify the specific deficiencies in those claims.  The Amended Complaint, however, does not cure the defects in these claims identified by the Court in the Opinion.

Specifically, as to the equal protection claim, the Court noted that the Lasches had not demonstrated that similarly situated persons, who did not share their religious beliefs, were treated differently.  The Lasches have failed to identify any similarly

1

situated persons who were treated differently, nor have they provided any statistical evidence of bias by defendants in placement between persons holding the Lasches' religious beliefs and persons who do not. The mere act of including a general allegation, without any plausible factual support, that "similarly situated persons" were treated differently utterly fails to cure the fatal defect in the Lasches' equal protection claim.

In the same manner, the Lasches' "amended" First Amendment claim remains infirm. The Court held that the Lasches had failed to demonstrate a causal relationship between any alleged antipathy to the Lasches' religious beliefs (that defendants apparently been aware of by December 2017) and any alleged "retaliatory conduct" in July 2018. As this Court noted, the facts as alleged did not in any way indicated that any defendants acted out of "hostility to the Lasches' religious beliefs," and the Court further considered the individual defendants questioning of Foster Child 1 about her own religious beliefs appropriate in light of the imminent possibility that the child might be adopted by a same-sex couple and because N.J. Admin Code § 3A:14-4.1(a) *requires* the Department of Children and Families to provide "reasonable opportunities to attend religious activities and services in accordance with the child's preference and the wishes of the child's own parents."

The Amended Complaint does not change the sequence of events described in the original Complaint. Rather, the Lasches try to correct the absence of proof regarding causation by including numerous editorial suppositions by the Lasches about the defendants' supposed motivations for the same events. For instance, plaintiffs add

2

phrases like "the attitude of the case worker towards the Plaintiff radically changed" to the description of the same events previously described in the Complaint, or include their subjective assessment that defendants' conduct "became even more hostile" to the Lasches' religion, or conjecture that the questioning of Foster Child 1 about the child's view on homosexuality was because defendants "wanted to separate [the child from the Lasches because of plaintiffs' religious beliefs."   Aside from these subjective musings by the Lasches about why the defendants took particular actions, the sequence of events described in the Amended Complaint remains the same as the chronology set forth in the original Complaint that the Court found, as a matter of law, could not support a claim of causation.

The Lasches' belated addition of their self-serving assessment of defendants' motivations does not change the actual sequence of events or require the Court to reconsider the amply-supported conclusion that the sequence of events set forth regarding discussions of sexuality and the ultimate decision by a court to remove Foster Child 1 cannot support a finding of a First Amendment violation.

Moreover, even to the extent that the Amended Complaint might be found to cure the deficiencies in the original Complaint, dismissal is still appropriate because defendants undeniably would still have, at minimum, qualified immunity from the Lasches' claims in the Amended Complaint.  A defendant in a civil rights action enjoys qualified immunity unless their alleged actions violate a clearly-established statutory or constitutional right.  No court has ever found that a clearly established right exists for

3

a foster parent to share that person's own religious beliefs with a foster child in an effort to have that foster child adopt those same views.  Thus, even if the defendants' actions were to be construed as being a constitutional violation (which defendants strongly dispute) as opposed to being a legitimate effort to a place foster child in a manner that served the best interest of that foster child,  dismissal is still appropriate because defendants have qualified immunity from those claims.

## STATEMENT OF FACTS[1]

The background facts regarding this case were set forth in the parties' initial briefs on defendants' prior motion to dismiss, as well as the Court's well-reasoned opinion of September 26, 2019 (Dkt. No. 14) ("Opinion") at pages 2 through 6.  Defendants will therefore not repeat those facts at any length, except as pertinent to the present motion.

The Opinion provided for the dismissal with prejudice the of the Lasches' claims: (1) against all defendants under the Law Against Discrimination; (2) against the State, DCPP and DCPP employees in their official capacities; and (3) against all defendants as to alleged violation of Fourteenth Amendment due process rights.  (Opinion at 37.) The Opinion dismissed without prejudice the Laches claims against individual

---

[1] Given that this is a motion to dismiss on the pleadings, Defendants are required to state the facts as alleged in the Amended Complaint, and the Court must accept the factual allegations of the Complaint (but not any conclusory statements unsupported by facts) in the light most favorable to the Plaintiffs.  *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).  By setting forth the facts below for purposes of this motion, Defendants do not concede the truth of those allegations, many of which the Defendants would take issue with, if the claims against Defendants are not dismissed.

4

defendants under the New Jersey Civil Rights Act ("NJCRA"), § 1983 and § 1985 against the individual defendants that were premised on alleged violation of the equal protection rights under the Fourteenth Amendment or violation of the First Amendment, finding that the original Complaint's allegations failed to state cognizable claims for those causes of action.  (*Id.*)  The Court indicated that the Lasches could file an Amended Complaint as to those claims within thirty days   (Opinion at 37-38.)

With respect to the Lasches equal protection claim, the Opinion stated:

> Although Plaintiffs have not specifically identified which theory underlies their Equal Protection claim, Plaintiffs allege that they were subject to different treatment as a result of their religious beliefs, which amounts to a selective enforcement claim. However, that claim fails <u>as Plaintiffs have not alleged that the DCPP treated similarly situated foster parents, who did not share their religious beliefs, differently than Plaintiffs</u>. Plaintiffs' Complaint merely summarily alleges that Plaintiffs were denied equal protection of the law.  Their opposition brief provides no further clarity, but simply argues that they were subject to "governmental discrimination because of their [religious] beliefs." Pl. Br. at 9.  Because Plaintiffs <u>have not identified any comparable or similarly situated individuals who were treated differently</u>, Plaintiffs' equal protection claim fails to state a claim. *See Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) ("An essential element of a claim of selective treatment under the Equal Protection Clause is that the comparable parties were similarly situated. Persons are similarly situated under the Equal Protection Clause when they are alike in all relevant aspects."); *Bradley v. United States*, 299 F.3d 197, 206 (3d Cir. 2002) (explaining that differential treatment may be demonstrated "by <u>naming similarly situated members of an unprotected class who were not selected for the same search or, in some cases, by submitting statistical evidence of bias</u>.").

> [Opinion at 26 (emphasis added).]

Despite clear direction from this Court in the Opinion that the Lasches were required to identify "similarly situated individuals who were treated differently," which could be shown, for instance, by naming similarly situated members of an unprotected class who were treated differently or by submitting statistical evidence to demonstrate the existence of the alleged bias against them, the Lasches failed to include any such information in their Amended Complaint.  Instead, the Lasches apparently believe they can remedy this defect merely by including the following bare statement in their Amended Complaint, without plausible (or indeed, any) factual support to maintain this claim:

> The Defendants have discriminated against the Defendants on the basis of their religious beliefs and treated them differently than similarly situated people who do not hold these religious beliefs.

> [Amended Complaint, ¶ 52.]

The Lasches appear to believe that the mere recitation of the talismanic phrase "similarly situated people" in a pleading substitutes for the requirement of a good faith factual basis for an allegation of discrimination.  As discussed herein, this "hole" in the Lasches' equal protection claim is not "plugged" through the artifice of including a bare claim of discrimination.

As for the Lasches' First Amendment claim in the original Complaint, the Court found that the decidedly-murky allegations in the original Complaint could be construed to be asserting such a claim under two possible theories: (1) that the Lasches were

"retaliated against for simply holding the religious belief that homosexuality is a sin," or "for sharing their religious beliefs with Foster Child 1 while she resided in their home." (Opinion at 28.)  The Court found that the Lasches had failed to state a cognizable claim under the first theory because the Lasches had failed to establish the required causal connection between their religious beliefs and any alleged adverse action they suffered.  (*Id.*)  As for the Lasches' failure to demonstrate causation, this Court stated:

> In order to establish a causal connection, "the plaintiff usually must allege one of two things: (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link." *DeFranco v. Wolfe*, 387 F. App'x 147, 155 (3d Cir. 2010) (citing *Luren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). In the absence of such an allegation, "the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of fact should infer causation." *DeFlaminis,* 480 F.3d at 267 (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir.2000)).  As the Third Circuit has explained, at the motion to dismiss phase, the plaintiff must only allege some evidence, direct or circumstantial, of this element that is "enough to raise a right to relief above the speculative level." *Falco*, 767 F. App'x at 310 (quoting *Twombly*, 550 U.S. at 555).  However, Third Circuit has also cautioned that "[a] court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him [or her], particularly in his [or her] individual capacity, could be chilled from taking action that he [or she] deemed appropriate and, in fact, was appropriate." *Id.*   Here, Plaintiffs have not pled evidence of a causal link between Plaintiffs beliefs and the alleged retaliatory conduct.
>
> The order of events, as currently pled, belies Plaintiffs' position that the Individual Defendants' actions were in retaliation for Plaintiffs' religious beliefs. Plaintiffs Complaint alleges that in December 2017, the foster parents

7

of Foster Child 1's siblings were informed that the potential adoptive parents were a same-sex couple, yet when Plaintiffs inquired about the potential adoptive family, Defendants Higgins and Epperly claimed not to know any information about the potential adoptive family.  Thus, Plaintiffs factual allegations suggest that the Individual Defendants were aware of Plaintiffs' religious beliefs regarding homosexuality, as early as December 2017.  However, the alleged retaliatory actions – the removal of Foster Child 1 and the suspension of Plaintiffs' foster parent license – did not occur until July 2018, seven months later.  Seven months is not "unusually suggestive." *Falco*, 767 F. App'x at 314 (finding close temporal proximity where there were two instances of protected activity and retaliatory conduct, with nine months between first instance of protected activity and retaliatory conduct and one month between second instance of protected activity and allege retaliatory conduct); *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003)(finding lack of causal connection for First Amendment retaliation claim where three weeks passed between protected conduct, filing of sexual harassment complaint, and retaliatory action, Plaintiff's termination); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989)(finding unusually suggestive temporal proximity where two days passed between the protected activity and the alleged retaliation).

Although "timing plus other evidence" may be sufficient to establish causation "where the temporal proximity is not so close as to be 'unduly suggestive,'" Plaintiffs have not alleged any facts from which a fact finder could reasonably discern that the Individual Defendants acted out of hostility towards Plaintiffs' religious beliefs.   *Farrell*, 206 F.3d at 280. Plaintiffs' Complaint identifies various instances in which the DCPP employees questioned *Foster Child 1* about *her* beliefs.  Notably, DCPP is required by regulation to "work with the resource parent to provide the child in placement with reasonable opportunities to attend religious activities and services in accordance with the child's preference and the wishes of the child's own parents." N.J. Admin. Code § 3A:14-4.1(a). Defendants' questioning of Foster Child 1 regarding her religious beliefs was appropriate in light of the DCPP's regulatory obligations, and the imminent possibility

8

that Foster Child 1 might be adopted by a same-sex couple. Plaintiffs identify only one occasion on which the Individual Defendants inquired about Plaintiffs' religious beliefs, and in that respect, the inquiry appears to have been a limited one in which the Individual Defendants queried whether Plaintiffs would "reject Foster child 1 if she ever decided to explore her sexuality" and "sought assurance from the Plaintiffs that would not be the case." Compl. ¶29. Such questioning is not indicative of hostility towards Plaintiffs' particular religious beliefs, but rather, the Individual Defendants' exercise of their administrative functions as employees of the entity prescribed with the duty of safeguarding Foster Child 1's well-being. In light of the temporal chasm between the

Individual Defendants discovery of Plaintiffs' religious beliefs and the alleged retaliatory conduct, and the lack of other circumstantial evidence from which causation could be inferred, Plaintiffs fail to state a claim premised on retaliation for their religious beliefs.

The Amended Complaint does not cure these deficiencies. The fact remains that, based on the allegations in the Amended Complaint, defendants would have been aware by December 2017 of the Lasches' view on sexuality. The Amended Complaint does not add any significant additional occurrences to the timeline of events set forth in the original Complaint, a timeline that this Court held could not sustain a claim of causality required to express a cognizable First Amendment claim. Instead, the Lasches appear convinced that they can remedy the defects in the causation argument by appending their own subjective assessment of the defendants' intentions motivations to these same events.

For example, both the original Complaint and the Amended Complaint discuss the fact that defendant Kyle Higgins met with plaintiffs and the therapist for Foster

9

Child 1, at which time the parties discussed the fact that a court date was set for June

4, 2018, at which the options for placement of Foster Child 1 would be provided to a

judge who would made a decision, with DCPP not taking any position regarding those

options, allowing the children's law guardians advocate for Foster Child 1 and her

siblings.  *See* Complaint, ¶ 18; Amended Complaint, ¶ 18.  Both pleadings then note

that the Laches received a text from Foster Child 1's law guardian that adoption by the

same-sex couple was "off the table" and that the judge was requesting psychiatric

evaluations of all of the children.    *See* Complaint, ¶ 19; Amended Complaint, ¶ 19.  In

the Amended Complaint, the Lashes gratuitously add the following sentence at the end

of Paragraph 19: "It was at this point that the attitude of the case worker towards the

Plaintiffs radically changed."  However, the Amended Complaint does not describe any

new event or action by defendants that was not already set forth in the original

Complaint that occurred subsequent to that text to show evidence of a "radically

changed" attitude towards the Lashes.

Both pleadings then go on to describe – in exactly the same manner -- a

discussion between Jennifer Lasche and Foster Child 1's therapist in which the therapist

relayed a conversation she had with defendant Higgins.  *See* Complaint, ¶ 23; Amended

Complaint, ¶ 23.  The Amended Complaint then inserts the following new paragraph,

in which the Lasches provide a self-serving statement of their subjective conclusion

about  Higgins' motivations for this conversation:

> It is clear from this conversation that the Defendant Kyle
> Higgins wanted to place the Children with the Indiana

Couple and that she felt the Plaintiffs religious beliefs had been passed on to the Foster Children and interfered with that placement. At this point the Defendant Kyle Higgins conduct and the Conduct [sic] of the other Defendants became even more hostile.

[*See* Amended Complaint, ¶ 24.]

Although the Amended Complaint includes the conclusory statement that the "conduct" of Higgins and the other individual defendants "became more hostile," the Amended Complaint does not provide factual examples of conduct by Higgins or any other defendant after that call, other than the same events that were described in the original Complaint.

Both the original Complaint and the Amended Complaint then go on to describe – in identical language -- a meeting between Higgins and Foster Child 1 at a Dunkin's Donuts, at which they discussed the child's religious beliefs. *See* Complaint, ¶ 25; Amended Complaint, ¶ 26. Again, the Lasches attempt to patch the holes in their case, not by inserting additional facts, but rather by again providing their own gratuitous supposition for Higgins's motives, stating:

The actions of the Defendant Kyle Higgins at the Dunkin Doughnuts was an attempt to convince the Foster Child that she did not want to be adopted by the Plaintiffs and the questioning of the Child about her religious beliefs in general and regarding homosexuality in particular are evidence that the reason she wanted to separate the Foster child from Plaintiff was because of plaintiffs religious beliefs.

[*See* Amended Complaint, ¶ 27.]

11

Both the Complaint and the Amended Complaint then go on to discuss -- in an identical fashion -- a June 22, 2018 call between the Lasches and defendants Higgins and Epperly, to discuss scheduling a meeting about the views that Foster Child 1 and her sibling had expressed regarding homosexuality.   *See* Complaint, ¶ 27; Amended Complaint, ¶ 29.   However, in the Amended Complaint, the Lasches again insert a subjective explanation about why *they think* defendants desired a meeting, stating:  "That the Defendant indicated that they were concerned that the Foster Children had adopted a religious belief of the Plaintiffs indicates a hostility to that religious belief."

In both pleadings, the Lasches then describe a June 29, 2018 meeting at which the Lasches' views on homosexuality were discussed.  *See* Complaint, ¶ 29; Amended Complaint, ¶ 34.   In another instance in which the Lasches try to fix the fatal defect in their causality argument, the Lasches describe the same event in their Amended Complaint but append their own interpretation of the defendants' motives by grafting on the claim that it was "clear to the Plaintiffs from this meeting that the Defendants were hostile to the Plaintiffs [sic] religious beliefs regarding homosexuality."  *See* Amended Complaint, ¶ 34.

In short, the Amended Complaint does not alter by one iota the sequence of events preceding the decision to remove Foster Child 1 from their care or to suspend the Lasches' license to serve as foster parents.  This Court has already found that this sequence of events cannot support a claim that any decisions as to the Lasches service

as foster parents or license to serve in that role was caused by alleged religious discrimination.

Nor does the Amended Complaint address the central item of concern brought up during the June 29, 2018 meeting – whether the Lasches would provide assurances that they would not reject Foster Child 1 if the child decided to "explore her sexuality." *See* Amended Complaint, ¶ 34.   It must be noted that Foster Child 1's sibling had already been removed from the Lasches' home for "confidential reasons unique to" that child, pursuant to an agreement between DCPP and the Lasches.  *See* Amended Complaint, ¶ 16.  Thus, the possibility that the Lasches might decide to discontinue serving as foster parents due to a foster child's behavior (and concern about the consequences a child might experience because of such a decision) was more than a hypothetical concern with respect to the Lasches.

The fact that the Lasches would not provide assurances that they would not reject Foster Child 1 if she were to decide to "explore her sexuality" is a powerful reason, rooted in the best interests of the child and not any antipathy to the Lasches based purely on their religion, and plainly undercuts the contention that the removal of Foster Child 1 seven months after defendants were aware of the Lasches' views on homosexuality was because of religious discrimination.

The Opinion also dismissed without prejudice claims of any alleged conspiracy under § 1985.  As to such claims, the Court held in relevant part:

> In order to assert a violation of Section 1985, a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving,

either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." Plaintiffs' Section 1985 conspiracy claim fails, as well. To the extent Plaintiffs' 1985 claim is premised on the same factual underpinnings as their Equal Protection claim, the Section 1985 claim fails for similar reasons. Plaintiffs have not sufficiently alleged that they were treated differently than any comparable or similarly situated individuals. Plaintiffs' "mere conclusory allegations of deprivations of constitutional rights are insufficient to state a § 1985(3) claim."

Furthermore, Plaintiffs have not alleged any facts suggesting an agreement or concerted action amongst the Individual Defendants.

Plaintiffs' Section 1985 conspiracy claim is dismissed without prejudice.

[Opinion at 31-32 (citations omitted).]

The conspiracy claim set forth in the Amended Complaint fares no better than the one set forth in the original Complaint. First, as discussed herein, the Lasches' equal protection claim in the Amended Complaint fails, which is fatal to any conspiracy claim.

Second, Plaintiffs have failed to plead the existence of an act in furtherance of the conspiracy for the purpose of depriving the Lasches of equal protection rights. They allege only that a call occurred on June 22, 2018 and a meeting transpired thereafter to discuss the Lasches' religious beliefs, prior to the New Jersey court's decision to remove Foster Child 1 from the Lasches' home. *See* Amended Complaint, ¶ 55. As of that time, no alleged "injury" could be claimed.

14

As to the "injury" – the removal of Foster Child 1 and the suspension of their license as foster parents, the Lasches merely conjecture that all defendants had to be involved in those events, because such action "could not have been taken solely on the imitative [sic] of the case worker but also required the approval and cooperation of the bother [sic] Defendants." *See* Amended Complaint, ¶ 55.   As discussed herein, such vague conjecture does not substitute for an actual plausible factual basis for a claim that the Defendants conspired for the purpose of depriving the Lasches of a constitutional right.

Moreover, given that the Court has previously held that the facts even as as pleaded by Plaintiffs demonstrate that Defendants were engaged in an "exercise of their administrative functions as employees of the entity prescribed with the duty of safeguarding Foster Child 1's well being," *see* Opinion at 30-31, the Amended Complaint cannot state a viable claim that Defendants acted for the purpose of denying the Lasches' equal protection rights.

As discussed herein, the Amended Complaint contains fatal defects in each of its claims, and the Court should dismiss those claims with prejudice.

## STANDARD OF REVIEW

A.    **Motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).**

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(1), a District Court must distinguish between facial and factual challenges to its subject matter jurisdiction. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

"In a facial attack a Defendant argues that the Plaintiff did not properly plead jurisdiction . . . [whereas] a 'factual attack' asserts that jurisdiction is lacking on the basis of facts outside of the pleadings." *Smolow v. Hafer*, 353 F. Supp. 2d 561, 566 (E.D. Pa. 2005). If the court is considering a "factual" attack, where a challenge is based on the sufficiency of the jurisdictional facts, the court is free to weigh the evidence and satisfy itself whether it has the power to hear the case. *Brown v. U.S. Steel Corp.*, 2010 U.S. Dist. LEXIS 115503, at *6 (W.D. Pa. Oct. 29, 2010). In doing so, the court should "consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the Plaintiff." *Gould Elecs., Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000) (citations omitted). Nevertheless, for either a facial or factual attack, the burden is on the plaintiff to prove jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936).

## B. Motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a reviewing court must accept the plaintiff's factual allegations as true; however, a plaintiff's conclusory allegations and legal conclusions are not entitled to the same assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Anspach v. City of Philadelphia*, 503 F.3d 256, 260 (3d Cir. 2007) (quoting *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (holding conclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent dismissal)).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 678.  Where the claims asserted are fatally defective and the plaintiff cannot plead any facts to support claims, it is appropriate for the court to dismiss a complaint without permitting the plaintiff to make a curative amendment of his pleading.  *Oran v. Stafford*, 34 F. Supp. 2d 906, 913-14 (D.N.J. 1999), *aff'd*, 226 F.3d 275 (3d Cir. 2000).  Thus, dismissal for failure to state a claim is justified where there is an "insuperable barrier" to a claim, such as an immunity.  *See Flight Sys., Inc. v. Elec. Data Sys.*, 112 F.3d 124, 127-28 (3d Cir. 1997); *Camero v. Kostos*, 253 F. Supp. 331, 338 (D.N.J. 1966).

## ARGUMENT

### POINT I

### THE LASCHES' EQUAL PROTECTION CLAIM FAILS BECAUSE THEY HAVE NOT INCLUDED A PLAUSIBLE FACTUAL BASIS FOR THE ASSERTION THAT THEY WERE DISCRIMINATED AGAINST BECAUSE OF THEIR RELIGIOUS BELIEFS.

The Opinion dismissing the original Complaint plainly warned the Lasches that an Equal Protection claim requires the identification of "comparable or similarly-situated individuals who were treated differently," which could be demonstrated "by naming similarly situated members of an unprotected class who were not selected" for similar treatment" or "by submitting statistical evidence of bias." *See* Opinion at 26.

The Amended Complaint does not do either of those things. Instead, the Lasches include a bald assertion that "Defendants have discriminated against the Defendants on the basis of their religious beliefs" and "treated them differently than similarly situated people who do not hold these religious beliefs." The Lasches apparently believe that the mere incorporation of the phrase "similarly situated people" into their pleading is sufficient. *See* Amended Complaint, ¶ 52. It is not.

The Third Circuit has made clear that conclusory allegations of equal protection discrimination are not sufficient to survive a motion to dismiss when facts are not alleged that would support the assertion that similarly-situated persons were, in fact, treated differently. First, to be similarly situated, parties must be "alike in all relevant aspects." *Perano v. Township of Tilden*, 423 Fed.Appx. 234, 238 (3d Cir. 2011) (quoting

18

*Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008)). Second, and of most significance in this case, "[a]t the motion to dismiss stage, [a claimant] must allege facts sufficient to make plausible the existence of such similarly situated parties." *Id.* If, as here, the allegations are simply that the plaintiff "was treated differently from other similarly situated [parties,]" without more specific allegations as to those similarly situated parties, a plaintiff has not "made plausible the conclusion that those parties exist and that they are like him in all relevant aspects." *Id.* Instead, the Lasches include a bald assertion that "Defendants have discriminated against the Defendants on the basis of their religious beliefs" and "treated them differently than similarly situated people who do not hold these religious beliefs."

For these reasons, the Court should dismiss the Lasches' equal protection claim with prejudice this time, because the Lasches have been provided with two opportunities to set forth a viable claim and have failed to do so.

## POINT II

### PLAINTIFFS CANNOT STATE A COGNIZABLE FIRST AMENDMENT CLAIM BECAUSE THEY CANNOT ESTABLISH THAT DEFENDANTS' ALLEGED VIOLATION OF FIRST AMENDMENT RIGHTS CAUSED THE REMOVAL OF THE FOSTER CHILD OR THE SUSPENSION OF THEIR LICENSE TO SERVE AS FOSTER PARENTS.

As noted above, the Opinion dismissing the original Complaint thoroughly analyzed the allegations of the Complaint to decide whether the facts alleged were sufficient to allow a conclusion that the Lasches' religious beliefs caused the "adverse

actions" they claim to have suffered.  The Court noted that the events described, as  a matter of law, could not establish causation, noting the long delay from when defendants were originally aware of the Lasches' religious views (December 2017) and the removal of Foster Child 1 seven months later and the suspension of the Lasches' license to act as foster parents, which occurred several months after that.  *See* Opinion at 29.

The Amended Complaint describes the exact same chronology of events, except that the Lasches now append to each allegation their own self-serving proclamation about why defendants supposedly did these same acts.  This is not a cure for the defects in the original Complaint.  To the extent that the First Amendment claims in the original Complaint might be viewed as a broken-down car without a functioning engine that would allow the vehicle to move forward (because of the lack of plausible evidence of causation), the Lasches' Amended Complaint is that same vehicle, simply with new hubcaps.

As the Court found in its earlier Opinion, "Plaintiffs have not alleged any facts from which a fact finder could reasonably discern that the Individual Defendants acted out of hostility towards Plaintiffs' religious beliefs," and the events described in the pleading concerning defendants' conversations about religion centered on Foster Child 1 and were "not indicative of hostility towards Plaintiffs' particular beliefs," but  instead evidenced defendants' "exercise of their administrative functions as employees of the

entity prescribed with the duty of safeguarding Foster Child 1's well being." *See* Opinion at 30-31.

The Court's Opinion posited, in the alternative, that the Lasches may have been claiming a First Amendment right to share religious beliefs with a foster child, and noted that it is "unclear whether such conduct is constitutionally protected." *See* Opinion at 31. Defendants are unaware of any case that has suggested that such a right exists under the First Amendment and doubt that such precedent exists, and the Lasches certainly have not identified any authority that states a First Amendment right exists for a foster parent to express the foster parent's own religious beliefs to a foster child. To the extent that the *actual* deprivation claimed is the discontinuation of the foster parent relationship, as noted by defendants in the initial motion to dismiss, and recognized by the Court in the Opinion, courts have held that no constitutionally protected right exists to continue a foster-parent relationship. *See* Opinion at 19, n.7.

Moreover, even under the alternative theory that the First Amendment right at issue is the right to express religious views to a foster child, the claim is still infirm because of the inability to demonstrate causation, as discussed above.

For these reasons, the purported First Amendment claim set forth in the Amended Complaint remains infirm. Given that the Lasches have had two opportunities already to state such a claim, any potential First Amendment claims against defendants should not be dismissed with prejudice.

## POINT III

### THE LASCHES HAVE FAILED TO PLEAD THE REQUIRED ELEMENTS OF A CONSPIRACY CLAIM UNDER § 1985, AND THAT CLAIM SHOULD BE DISMISSED.

To assert a violation of § 1985, a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983)).

As noted, *supra*, in Point I, the Lasches cannot state a valid equal protection claim. That failure dooms any claim under § 1985, which necessarily relies on the foundational fact that the Lasches were supposedly treated differently than similarly-situated persons, *see* Opinion at 32.   In addition, the Amended Complaint, with its conclusory statement that the defendants all had to have been involved in a conspiracy to remove Foster Child 1 and suspend the Lasches' license because the Lasches contend that those actions "could not have been taken solely on the imitative [sic] of the case worker but also required the approval and cooperation of the bother [sic] Defendants," is not a sufficient factual basis for a § 1985 conspiracy claim. *See id.* (citing *Aulisio v. Chiampi*, 765 F. App'x 760, 764 (3d Cir. 2019) (dismissing conspiracy claim against state prison officials because inmate-prisoner "offered nothing more than conclusory statements

22

that Defendants conspired to deprive him of his constitutional rights; no evidence suggests that they agreed, plotted, or even discussed doing so").

## POINT IV

## AT MINIMUM, DEFENDANTS HAVE QUALIFIED IMMUNITY AS TO THE LASCHES' CLAIMS.

As shown herein, the individual defendants are, at minimum, entitled to qualified immunity with respect to Plaintiff's claims. Qualified immunity is designed to accommodate the competing values between providing a cause of action for the deprivation of constitutional rights and the need for public officials to discharge their discretionary powers without undue fear of personal liability. *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007) (citations omitted). Moreover, the doctrine applies regardless of whether the official's error is a mistake of law, a mistake of fact or a mistake based on mixed questions of law and fact. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The immunity is necessarily "broad in scope and protects" public officials except those who are "plainly incompetent" or "knowingly violate the law." *Curley*, 499 F.3d at 206 (citations omitted).

When a defendant in a § 1983 action claims qualified immunity, a two-part inquiry must be undertaken. *See Pearson*, 555 U.S. at 232; *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court is required to consider whether the plaintiff's allegations assert that the defendant's conduct violated a constitutional right at all. *Pearson*, 555 U.S. at 232. The court is also required to determine whether the constitutional right at issue

was "clearly established" at the time of the alleged misconduct. *Id.* "[W]hether [a public official] made a reasonable mistake of law and is thus entitled to qualified immunity is a question of law that is properly answered by the court, not a jury." *Curley*, 499 F.3d at 211 (citing *Carswell v. Borough of Homestead*, 381 F.3d 235, 242 (3d Cir. 2004)).

Whether an official is shielded from liability by qualified immunity for alleged unlawful official action turns on the "objective legal reasonableness" of the action assessed in light of the "clearly established" law at the time the action was taken. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Plumhoff v. Rickard*, 572 U.S. 765, 773-74 (2014). To determine whether a right was "clearly established," the question is whether, "at the time of the challenged conduct, the contours of a right [we]re sufficiently clear that every reasonable official would have understood that what he [wa]s doing violate[d] that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation and quotes omitted); *Harlow v. Fitzgerald*, 457 U.S. 800, 817-19 (1982). The Supreme Court has held that absent "controlling authority," a "robust consensus of cases of persuasive authority" must have placed the statutory or constitutional question confronted by the officials "beyond debate." *al-Kidd*, 563 U.S. at 741.

Whether a right is clearly established is a determination that must be made in light of the specific facts of a case, and not as a generalized proposition. *Saucier v. Katz*, 533 U.S. 194, 206 (2001). The right must be sufficiently clear so a reasonable official would understand the actions violate a clearly established right. *Anderson v. Creighton*, 483 U.S. 635, 635 (1987). There must be sufficient precedent at the time of the action

24

to put the official on notice the official's conduct was prohibited. *Mammaro v. N.J. Div. of Child Prot.& Permanency*, 814 F.3d 164, 169 (3d Cir. 2016) (quoting *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001) ).

The Supreme Court recently reiterated "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742). "The dispositive question is whether the violative nature of *particular* conduct is clearly established," *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (emphasis in original), so the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *al-Kidd*, 563 U.S. at 742. Otherwise, plaintiffs could "convert the rule of qualified immunity" into "a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights," thus "making it impossible for officials reasonably to anticipate when their conduct may give rise to liability for damages." *Anderson*, 483 U.S. at 639.

Instead, because the "clearly established" standard requires "a high 'degree of specificity,'" the "legal principle" at issue must "clearly prohibit the [public official's] conduct in the particular circumstances before" the official. *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Mullenix*, 136 S. Ct. at 309).

In this regard, "[i]t is not enough that the rule is suggested by then-existing precedent.  The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply."  *Id.* (citing *Reichle v. Howards*, 566 U.S. 658, 666 (2012)).  This means an official is immune unless prior case law "squarely governs" the conduct at issue, *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004), such that its unlawfulness "follow[s] immediately," *Mullenix*, 136 S. Ct. at 309, is "obvious," *Wilson v. Layne*, 526 U.S. 603, 615 (1999), and is "apparent."  *Anderson*, 483 U.S. at 640.  Without "sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited," *Mammaro*, 814 F.3d at 169, a § 1983 claim must be dismissed.  In the very recent past, in *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018), the Supreme Court re-emphasized that qualified immunity should not be denied based on generalized contentions about "clearly established" rights and expressed frustration at lower courts continuing to deny such immunity when analogous precedent involving factually-similar fact patterns have not been identified.

Thus, to overcome the Defendants' claim of qualified immunity, the Lasches must show the existence of clearly established statutory or constitutional law providing that consideration of a foster parent's or potential adoptive parent's views on homosexuality in making recommendations regarding custody or adoption violates a clearly established constitutional right.  To Defendants' knowledge, no precedent exists

that has held that making a recommendation about custody that takes into account a foster parent's/potential adoptive parent's views on sexuality violates a constitutional right -- and certainly not in a factual context like the present matter, in which a same-sex couple were prospective adoptive parents, which plainly necessitated discussions with Foster Child 1 about same-sex relationships.

Thus, defendants have qualified immunity from the Lasches' claim, even if this Court believes that a constitutional violation may have occurred.

## **CONCLUSION**

Based on the foregoing, Plaintiffs' Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By:  /s/ Robert J. McGuire
Robert J. McGuire (046361992)
Deputy Attorney General

DATE: November 21, 2019