# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

MICHAEL LASCHE AND
JENNEFER LASCHE

Plaintiffs,

v.

STATE OF NEW JERSEY, ET. AL.

Defendants.

Civil Action No. 3:18-cv-17552-FLW-TJB

BRIEF IN OPPOSITION TO MOTION TO
DISMISS AMENDED COMPLAINT

MESSINA LAW FIRM, P.C.
961 Holmdel Road
Holmdel, NJ  07733
(732) 332-9300
mlaffey@messinalawfirm.com
Attorneys for Plaintiffs

Michael P. Laffey Esq.
On The Brief

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITES ………………………………………………………… ii

PRELIMINARY STATEMENT...……………………………………………………… 1

STATEMENT OF FACTS ……………………………………………………….... 1

LEGAL ARGUMENT

POINT I

STANDARD OF REVIEW ………………..……………………………………. 4


POINT I

PLAINTIFFS HAVE PLED SUFFICIENT FACTS TO MAKE A
PLAUSIBLE CLAIM THAT THEIR FIRST AMENDMENT RIGHTS
HAVE BEEN VIOLATED ………………………………………………….. 5

POINT II
PLAINTIFFS HAVE PLED THE REQUIRED ELEMENTS OF A
CONSPIRACY CLAIM UNDER 1985……………………………………………. 8

POINT III
THE DEFENDANTS ARE NOT ENTITLED TO
QUALIFIED IMMUNITY ……………………………………………………. 10

POINT IV
PLAINTIFFS HAVE PROERLY PLED THEIR
EQUAL PROTECTION CLAIM  ……………………………………………. 8

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITES ………………………………………………… ii

PRELIMINARY STATEMENT..…………………………………………… 1

STATEMENT OF FACTS …………………………………………………... 1

LEGAL ARGUMENT

POINT I

STANDARD OF REVIEW ……………..………………………………….  4


POINT I

PLAINTIFFS HAVE PLED SUFFICIENT FACTS TO MAKE A
PLAUSIBLE CLAIM THAT THEIR FIRST AMENDMENT RIGHTS
HAVE BEEN VIOLATED …………………………………………………..  5

POINT II
PLAINTIFFS HAVE PLED THE REQUIRED ELEMENTS OF A
CONSPIRACY CLAIM UNDER 1985……………………………………. 8

POINT III
THE DEFENDANTS ARE NOT ENTITLED TO
QUALIFIED IMMUNITY ………………………………………………….  9


POINT IV
PLAINTIFFS HAVE PROERLY PLED THEIR
EQUAL PROTECTION CLAIM   ……………………………………………  11

CONCLUSION ……………………………………………………………………12

Table of Citations

Cases

*Ae Ja Elliot-Park v. Manglona,* 592 F.3d 1003 (9th Cir. 2010)................................. 10

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009). ........................................................................ 4

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ................................................. 4

*Brown v. Philip Morris, Inc.*, 250 F.3d 789, (3d Cir. 2001)…………………………... 8

Church of Lukumi Babalu Aye v. City of Hialeah, 508 U.S. 520 (1993)…………….. 10

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114 (3d Cir. 2013) ……. 4

*DeFranco v. Wolfe*, 387 F. App'x 147 (3d Cir. 2010)…………………………………... 5

*Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir. 2009)…………………………….... 4

*Griffin v. Breckenridge*, 403 U.S. 88, (1971)…………………………………………… 9

*Hope v. Pelzer,* 536 U.S. 730 (2002)…………………………………………………… 10

In re "E", 59 N.J. 36 (N.J. 1971)…………………………………………………….. 8, 10

*Kiesla v. Hughes* 138 S.Ct. 1148 (2018)…………………………………………… 10, 11

*Krouse v. Am. Sterilizer Co*., 126 F.3d 494 (3d Cir. 1997)……………………………… 5

Lasche  Lasche v. New Jersey, Civil Action No. 18-17552 (FLW)(TJB),

2019 U.S. Dist. LEXIS 166214, (D.N.J. Sep. 26, 2019)……………………………... 5, 11

*Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259 (3d Cir. 2007)………………..... 5

Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n, 138 S. Ct. 1719 (2018)……….. 10

Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)…………………………………… 11

*Obergefell v. Hodges,* 135 S. Ct. 2584, (2015)………………………………………. 8, 10

*Robinson v. Southeastern Pa. Transp. Auth*., 982 F.2d 892 (3d Cir. 1993)…………….... 5

*Thomas v. Indep. Twp*., 463 F.3d 285, (3d Cir. 2006) ………………………………..... 5

*Thompson v. Real Estate Mortg. Network,* 748 F.3d 142 (3d Cir. 2014)  …………… 4,5

*Ward v. Connor*, 657 F.2d 45 (4th Cir. 1981)…………………………………………… 9

*Willowbrook v. Olech,* 528 U.S. 562, (2000)…………………………………………… 12

iii

*Word of Faith World Outreach Ctr. Church v. Sawyer,* 90 F.3d 118 (5th Cir. 1996)............ 9

<u>Statutes</u>

42 USCS § 1985.  Section 1985 (3)………………………………………………….… 8

## PRELIMINARY STATEMENT

Plaintiffs have filed a complaint against various employees of the State Division of Child Placement and Permanency. The complaint alleges pervasive discrimination against the Defendants by these various employees. The Plaintiffs further allege that the discrimination was because of their deeply held religious beliefs. This discrimination culminated in a foster child being taken from the Plaintiffs, the State denying them the opportunity to adopt the child and the Plaintiffs being suspended from the foster care system. The discrimination manifested itself in the actions of the Defendants while they were performing administrative, investigative and other functions. While there may not be a right to be a foster parent, or to adopt a child, there is a constitutional right to participate in the system free from discrimination because of one's religious beliefs. Plaintiffs do not seek to force the State to allow them to adopt a specific child but seek the right to participate in the Foster Care system moving forward without being discriminated against for their beliefs.

## STATEMENT OF FACTS

The Plaintiffs, Michael and Jennifer Lasche are Foster Parents licensed by the State of New Jersey. They are devout Christians who hold to traditional values and beliefs about family, marriage and sex. Plaintiffs had Fostered children prior to the events set forth herein. Jennifer Lasche is also a former foster child who was adopted by her Foster Parents. See Plaintiffs' Complaint attached as exhibit A to the certification of Michael P. Laffey hereinafter referred to as the "Complaint" at ¶ 1

1

The various individuals named in the complaint are all employees or agents of the New Jersey State Division of Child Placement and Permanency ("DCP&P"). . Complaint ¶ 1-7

On or about September 1, 2017, the defendants Kyle Higgins and Katie Epperly called the Plaintiffs about two girls being removed from a foster home and asked if Plaintiffs would take them in. The girls were ages 13 (hereinafter referred to as "Foster child 1") and 10 (hereinafter referred to as "Foster child 2"). Plaintiffs agreed to the placement. Foster Child 2 was subsequently removed from the home with the agreement of all parties. This occurred prior to the start of the discriminatory acts alleged in the complaint. Foster Child 1 was the oldest of five siblings placed in foster care. Complaint ¶ 8

After the placement, the child moved to adoption and Kyle Higgins advised the Plaintiffs that the girls' cases were moving towards adoption and that the natural father's rights were already terminated. Complaint ¶ 9 In October of 2017, during the monthly visit, Kyle Higgins advised Plaintiffs that the case is moving towards adoption and that they would have the first choice to adopt the girls. Complaint ¶ 10 In November of 2017, Plaintiffs were advised that the natural mother had surrendered her parental rights and that the children were now free for adoption. Complaint ¶ 11  In December of 2017, Kyle Higgins met with the Plaintiffs and informed them that they were in consideration for adoption. Complaint ¶ 12

It was then that the Defendants commenced engaging in discriminatory acts against the Plaintiffs based on the Plaintiffs religious beliefs about homosexuality. Those acts of discrimination and which manifest the discriminatory intent of the Defendants include;

- Hiding information about other prospective parents for the child while sharing that same information with the Foster Parents of the child's siblings. Complaint ¶ ¶13,14,15

- Attempted to turn the foster child against the Plaintiffs ¶25-27

- Interrogating and badgering the foster Child about her and religious beliefs and the religious beliefs of her foster Family. Complaint ¶ 20,22,24,25

- Statements made that the Foster Child would need Psychiatric care because she shared the religious beliefs of the Defendant. Complaint ¶ 34

- Their disregard for the wishes of the Foster Child and the Foster Child's best interests Complaint ¶.28,35,39

- The denial of Plaintiffs' rights granted by Statute to address the Judge at the hearing about the Foster Child continuing to live with Plaintiffs which prevented them from addressing any attacks on them or their religious beliefs. Complaint ¶ 36

- The Plaintiffs being suspended from the Foster Care system because of their religious beliefs and the failure of the Defendants or some of them from even advising Plaintiffs that they were suspended as Foster Parents. This was a violation of the Rule and regulations and / or procedures of the DCP&P. Complaint ¶ 40-42

Plaintiffs have filed the Complaint in this action seeking damages and attorney's fees on some of the counts but also seeking injunctive relief. Plaintiffs are not seeking to overturn any determinations made regarding the Foster Child as it would be unfair to subject a child who has already suffered a great deal ofcontinued uncertainty as to her fate because of litigation. The injunctive relief that the Defendants seek is to be re-instated as Foster Parents and to participate in the system going forward without being subject to religious discrimination and prejudice by the employees of the DCP&P.

## LEGAL ARGUMENT

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal,* 556 U.S. 662, 662, (2009). "Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler,* 578 F.3d at 213 (quotation marks and citations omitted); see also *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117-18 (3d Cir. 2013)." *Thompson v. Real Estate Mortg. Network,* 748 F.3d 142, 147 (3d Cir. 2014)

## POINT I

## PLAINTIFFS HAVE PLED SUFFEICIENT FACTS TO MAKE A PLAUSIBLE CLAIM THAT THEIR FIRST AMENDMENT RIGHTS HAVE BEEN VIOLATED.

Plaintiffs allege that the Defendants have discriminated against them by denying them the right to adopt through the foster system or to be foster parents because of their religious belief that homosexuality is a sin and or because they expressed that belief to a foster child. Retaliatory action was taken against them for holding a religious belief and for expressing that belief. To

4

plead a claim for retaliation plaintiff must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006), *Lasche v. New Jersey,* Civil Action No. 18-17552 (FLW)(TJB), 2019 U.S. Dist. LEXIS 166214, at *38 (D.N.J. Sep. 26, 2019).

The question before the Court is have the Plaintiffs pled a sufficient factual basis for the Court to find that it is plausible to conclude that there is a causal link between the constitutionally protected conduct and the retaliatory action.

To establish the requisite causal connection for a retaliation claim predicated on the First Amendment, the plaintiff (here, a prisoner) usually must prove either an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or a pattern of antagonism coupled with timing to establish a causal link. *Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir. 2007). "If neither of these showings is made, then the plaintiff must show that, from the evidence in the record as a whole, the trier of fact should infer causation. "*Id. DeFranco v. Wolfe*, 387 F. App'x 147, 154 (3d Cir. 2010), *Thompson v. Real Estate Mortg. Network,* 748 F.3d 142, 147 (3d Cir. 2014)

However the Third Circuit has made it clear that the "mere passage of time is not legally conclusive proof against retaliation." And that "when temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997), see also *Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 894 (3d Cir.

1993). The Amended Complaint more clearly identifies the triggering event and sets forth the aevidence of animus that take place between that triggering event and the final acts of retaliation.

The first indication that the Division may have been aware of the Plaintiffs' religious beliefs is in late December 2017. This is based on the case workers failure to share that a prospective adoptive family for the children was a same sex couple with Plaintiffs while freely sharing that information with the foster parents for their foster child's siblings (Complaint ¶¶ 14-15). This merely gives an inkling of the attitude of the case workers towards Plaintiffs' religious beliefs. At that point it was not yet decided who would be adopting the foster child and in fact it looked like the same sex couple would be adopting the children and there was of yet no reason to exhibit hostility towards the Plaintiffs. It was after the Court removed that family as an option and directed the division to evaluate Plaintiffs (Complaint ¶ 19)as adoptive parents (an evaluation that never took place) that the case worker and other employees of the Division showed their hostility towards the Plaintiffs' beliefs. As the Amended complaint makes clear it is at that point that the retaliatory action starts. When the Division firsts believe that Plaintiffs may actually be able to adopt the child is when the Defendants show their animus. The case worker badgers the child about her religious beliefs (Complaint ¶ 25), which, she seems to believe the child picked up from Plaintiffs. At the same time she is trying to poison the relationship between the foster mother and the child by lying to her and telling the child that the Foster Mother tells her everything the child says. She further talks to the child about being adopted in the same household as her brothers without advising the law guardian (Complaint ¶ 22). This is in direct conflict with the instructions of the New Jersey state courts (Complaint ¶ 19). The case worker had the child's psychologist raise the issue of these religious beliefs and the child being adopted with her brothers (Complaint ¶ 23). <u>Each and every time</u> the Defendants

6

tried to convince the child to be adopted by someone else they also raised the issue of Plaintiffs and the child's religious beliefs about homosexuality. This all culminated in a meeting with numerous employees of the Division where the entire conversation focused on Plaintiffs' religious beliefs about homosexuality including the outrageous statement that because the child had that belief she would require therapy. Effectively saying that anyone who holds this belief is suffering from a mental affliction (Complaint ¶ 34).

The Defendants try to offer alternate explanations for these hostile actions some of which involve speculation outside the four corners of the Complaint. Nevertheless, it is plausible that the subsequent removal of the Foster Child from the Plaintiffs, removal from consideration as adoptive parents and their subsequent suspension as foster parents, all done without following proper procedures, was in retaliation for Plaintiffs' religious beliefs and / or their voicing those beliefs. The fact that there exists a possibility that there was an alternative reason for the actions of the Defendants does not mean that Plaintiffs' allegations are not plausible. Not only was the religious belief issue the one issue consistently raised in a negative light by the Division employees but the Division never offered any alternative explanation to the Plaintiff for either the decision to remove the child on short notice or for their suspension as foster parents. The statements and the actions of the Defendant are all evidence of retaliatory animus.

While changes in how society views homosexuality has made such beliefs unpopular they are still entitled to constitutional protection. In legalizing same sex marriage the Supreme Court stated;

> It must be emphasized that religions, and those who adhere to religious doctrines, may continue to advocate with utmost, sincere conviction that, by divine precepts, same-sex marriage should not be condoned. The First Amendment ensures that religious organizations and persons are given proper protection as they seek to teach the principles that are so fulfilling and so central to their lives and faiths, and to their own deep aspirations to continue the family structure they have long

revered. *Obergefell v. Hodges,* 135 S. Ct. 2584, 2607, 192 L.Ed.2d 609, 634 (2015).

Whatever the opportunity to adopt is labeled, a court cannot disqualify someone from adopting solely on religious grounds without violating that person's rights to free exercise of his religious beliefs. In re *"E",* 59 N.J. 36, 53 (1971)

## POINT II

## PLAINTIFFS HAVE PLED THE REQUIRED ELEMENTS OF A CONSPIRACY CLAIM UNDER 1985

Assuming that Plaintiffs have alleged sufficient facts to render their claim of religious discrimination plausible the they have also properly plead a cause of action pursuant to 42 USCS § 1985. Section 1985 (3) states in pertinent part;

> If two or more persons in any State or Territory conspire,…for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, <u>or of equal privileges and immunities under the laws;</u> [emphasis added] . . . .[and] in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, <u>or deprived of having and exercising any right or privilege of a citizen of the United States,</u> [emphasis added] the party so injured or deprived may have an action for recovery of the damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

In general, the conspiracy provision of 42 U.S.C.S. § 1985(3) provides a cause of action against both private and state actors. In order successfully to bring an action under § 1985(3) for private conspiracy, a plaintiff must show, inter alia, (1) that a racial or other class-based invidious discriminatory animus lay behind the co-conspirators' actions, (2) that the co-conspirators intended to deprive the victim of a right guaranteed by the Constitution against private impairment, and (3) that that right was consciously targeted and not just incidentally affected *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 793 (3d Cir. 2001). The language requiring intent to

8

deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. *Griffin v. Breckenridge*, 403 U.S. 88, 102, (1971).

Plaintiffs' proof that they were discriminated against on the basis of their religious beliefs would prove class based invidious discriminatory animus. While the Third Circuit does not seem to have directly ruled on the issue, the lower federal courts have, almost without exception, extended the coverage of the statute to religious groups. *Ward v. Connor,* 657 F.2d 45, 48 (4th Cir. 1981)[1]

The question then becomes has the Plaintiff plead facts sufficient to prove the remaining prongs of the test.   Plaintiff complaint clearly sets out instances where more than one employee of the Division indicated that Plaintiffs' religious beliefs were an issue and instances when Defendants acted in concert. Additionally they have stated that the actions taken against them could not have been taken by the case worker on her own.

## POINT III

## THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

In arguing that the Defendants are entitled to qualified immunity, the State takes the position that this case is about a prospective adoptive parents views on homosexuality and whether a State worker should know that the Plaintiffs have a constitutional right to not have that considered. They completely ignore the religious aspect of the case. The State phrases the issue that way because they want to divorce the inquiry from the real issue. Should workers in the

---

[1] The exception being the 5th Circuit see *Word of Faith World Outreach Ctr. Church v. Sawyer,* 90 F.3d 118 (5th Cir. 1996)

Division know that they should not make decisions about adoption, custody and even whether a person can be a Foster Parent based on their disagreement with the religious beliefs of a person? Phrased as the case is truly presented to the Court their argument does not withstand scrutiny. There are numerous cases that would lead a reasonable state caseworker to the conclusion that it is impermissible to discriminate against someone on the basis of their religious beliefs. In Church of *Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 533, (1993) the Court held that a law targeting religious beliefs as such is never permissible. More recently the Supreme Court held in *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n,* 138 S. Ct. 1719, 1720, (2018) that "The government, if it is to respect the Constitution's guarantee of free exercise, cannot impose regulations that are hostile to the religious beliefs of affected citizens and cannot act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices. The Free Exercise Clause bars even subtle departures from neutrality on matters of religion." If that is not specific enough I would point them to the New Jersey State Supreme the case In re *"E",* Supra. where the Court held in 1971 in that discrimination on the basis of religious belief in making adoption decisions is impermissible.

On the issue of religious beliefs regarding homosexuality and whether that can be a basis for discrimination I would point the Defendants to the words of Justice Kennedy in *Obergefell v. Hodges, Supra.* at 2607. A clear expression from the Supreme Court that discrimination on that basis is not permissible.

Defendants rely on *Kiesla v. Hughes* 138 S.Ct. 1148 (2018) to argue otherwise. However *Kieslas* did not overrule The U.S. Supreme Court previous holding that expressly rejected a requirement that previous cases be "fundamentally similar" in order to put Defendants on notice that their conduct was unconstitutional. *Hope v. Pelzer,* 536 U.S. 730, 733, (2002) see also *Ae Ja*

10

*Elliot-Park v. Manglona,* 592 F.3d 1003, 1008-09 (9th Cir. 2010). *Kiesla* dealt with police officers making life and death decisions under emergent circumstances. The Supreme Court also pointed out the many conflicting cases in the lower court that could have led a police officer to reach different conclusion regarding when it is appropriate to use deadly force. *Kiesla* was not a rejection of *Hope v. Pelzer* but a clarification of its application in a factual scenario far removed from the scenario currently before the Court.

Finally it should be pointed out that qualified immunity would only affect Plaintiffs ability to collect damages but not their ability to obtain injunctive relief. See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 707, (1978)

## POINT IV

## PLAINTIFF HAS PROPERLY PLED THEIR EQUAL PROTECTION CLAIM.

In dismissing the Equal Protection claim in Plaintiffs first Complaint the Court stated that "Plaintiffs have not alleged that the DCPP treated similarly situated foster parents, who did not share their religious beliefs, differently than Plaintiffs. *Lasche v. New Jersey,* Civil Action No. 18-17552 (FLW)(TJB), 2019 U.S. Dist. LEXIS 166214, at *36 (D.N.J. Sep. 26, 2019). Plaintiff now alleges in their amended complaint in ¶ 52 state that "The Defendants have discriminated against the Defendants on the basis of their religion and treated them differently than similarly situated people who do not hold those beliefs." Defendants now complain that this formulaic recitation is not sufficient. Essentially Defendants are asking the Plaintiffs to name specific people who hold religious beliefs about homosexuality who did not have a foster child ripped from their home with no explanation as to why. Alternatively they could name people who did not hold the same religious beliefs as they do, that when the Court ordered an evaluation

for adoption they were actually evaluated and allowed to proceed with the adoption. They could also name people who don't hold the same religious beliefs as they do who were not suspended without being advised why they were suspended or even notified that they were suspended as required by the rules. In short they could specifically name every other foster parent they have ever personally known. I submit to the Court that we could very easily amend the Complaint to state just that but in the context of this particular case that would add nothing to Plaintiffs' claim then the statements that they have already made. They were treated differently because of what they believe. The fact that the Defendants did not follow normal procedures in suspending the Plaintiffs is in and of itself sufficient to show disparate treatment unless the Defendants intend to take the position that they ignore those procedures all the time. Equal protection claims are successfully brought by a "class of one," where the plaintiff alleges that they have been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Willowbrook v. Olech,* 528 U.S. 562, 563, (2000) As stated above the Plaintiffs have set forth a plausible claim that they were discriminated against because of their religious beliefs and because they expressed those beliefs. That coupled with the claim that they were treated differently than all similarly situated Foster Parents who did not share their religious beliefs sets forth a valid equal protection claim.

## Conclusion

For the reasons set forth herein Defendants motion to dismiss Plaintiffs complaint should be denied.

Date: January 7, 2020

*Michael P Laffey*
Michael P. Laffey
Attorney for Plaintiffs

12