# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL LASCHE and JENNIFER LASCHE,<br><br>    Plaintiffs,<br><br>    v.<br><br>STATE OF NEW JERSEY, ET AL.,<br><br>    Defendants. | Hon. Freda L. Wolfson, U.S.D.J.<br><br>CIVIL ACTION NO.<br>3:18-cv-17552-FLW-TJB |

## REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

MATTHEW J. PLATKIN
ACTING ATTORNEY GENERAL
OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 116
Trenton, NJ 08625
(609)376-2787
Attorney for Defendants,
State of New Jersey, the Division of Child Placement and Protection, Kyle Higgins, Mary Lippencot, Katie Epperly, and Janelle Clark

ROBERT J. McGUIRE (ID: 046361992)
DEPUTY ATTORNEY GENERAL
 On the Brief

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ...................................................................................................................... 3

    POINT I

        QUALIFIED IMMUNITY REQUIRES DISMISSAL OF
        THE LASCHES' FEDERAL CLAIMS ........................................................ 3

    POINT II

        ANY CLAIM FOR INJUNCTIVE RELIEF FAILS ................................. 8

    POINT III

        PLAINTIFFS' STATE LAW CLAIMS SHOULD ALSO
        BE DISMISSED ........................................................................................ 11

CONCLUSION ................................................................................................................ 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) ................................................................................................ 3

*Church of Lukumi Babalu Aye v. City of Hialeah*,
  508 U.S. 520 (1993) ................................................................................................ 4

*EEOC v. Metal Serv. Co.*,
  892 F.2d 341, 347 (3d Cir.1990) .......................................................................... 12

*El v. City of Pittsburgh*,
  975 F.3d 327 (3d Cir. 2020) ................................................................................... 6

*Ex Parte Young*,
  209 U.S. 123 (1908) ........................................................................... 2, 8, 9, 10, 11

*Finberg v. Sullivan*,
  634 F.2d. 50 (3d Cir. 1980) .................................................................................... 9

*Furnco Constr. Corp. v. Waters*,
  438 U.S. 567 (1978) .............................................................................................. 12

*Hope v. Pelzer*,
  536 U.S. 730 (2002) ....................................................................................... 1, 5, 6

*Kane v. Barger*,
902 F.3d 185 (2018) ................................................................................................ 7

*Lasche v. State of New Jersey*,
  2022 WL 604025 (3d Cir. Mar. 1, 2022) ............................................................. 10

*L.R. v. v. School Dist. of Philadelphia*,
836 F.3d 235 (2016) ................................................................................................ 7

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*,
  138 S.Ct. 1719 (2018) ......................................................................................... 4, 5

*Smith v. NY Sec'y of State*,
   2022 WL 970749 (E.D.N.Y. Mar. 31, 2022) .................................................................. 10

*Whole Woman's Health v. Jackson*,
   142 S.Ct. 522 (2021) ........................................................................................................ 9

## **PRELIMINARY STATEMENT**

Nothing in Plaintiffs' opposition motion can overcome the fatal defects in their Second Amended Complaint that the Defendants have identified. Although Plaintiffs claim that they are pressing a federal claim for damages, a federal claim for injunctive relief, and a state law claim, each falls short for dispositive threshold reasons.

First, as Defendants' moving papers laid out in some detail, Plaintiffs' claim for damages is barred by qualified immunity. The key consideration in qualified immunity analysis is whether prior case law (from the Supreme Court or a robust consensus of persuasive authority) clearly established that the challenged acts violate constitutional protections. But as Defendants explained, no case—let alone any consensus of cases— holds that an official violates the Constitution when they take into consideration the views on sexuality of potential foster parents (into whose home gay foster children could potentially be placed). And Plaintiffs identify none. Instead, Plaintiffs rely only on generalized case law regarding religious liberty, but that is the quintessential sort of generality that is insufficient to overcome qualified immunity. Nor do Plaintiffs get further by arguing the claimed violation is egregious and obvious. The violations that are sufficiently obvious that no clear case is needed are ones like *Hope v. Pelzer*, 536 U.S. 730 (2002), in which an inmate was forced to remove his shirt, handcuffed to a hitching post in the sun for seven hours with no bathroom breaks and given minimal amounts of water while a prison guard taunted him. This case could hardly be further afield.

1

Second, Plaintiffs' attempt to transform this case into one that seeks primarily an injunction—perhaps recognizing the weaknesses in their damages claim—runs into its own problems. Plaintiffs now appear to be arguing that their case can survive because they have adequately pleaded a potential claim for injunctive relief under *Ex Parte Young*, 209 U.S. 123 (1908). But as established in Defendants' moving papers, *Ex Parte Young* claims involve two components: they are made against a defendant in that defendant's official capacity, and that defendant must have the capacity (as a result of the official position the defendant holds) to take the action required by the requested injunction. In this case, however, Plaintiffs have not sued the individual employee defendants in their official capacity, and their pleading does not suggest that these defendants (who are not alleged to be involved in licensure decisions) can put into effect the injunctive remedy sought (providing Plaintiffs a license to serve as foster parents).

Finally, and as the parties now agree, there is no basis to proceed with the state law claim. Notably, Plaintiffs agree with Defendants that if the dismissal of these federal claims is appropriate, Plaintiffs' LAD claims should not proceed in this court and there is no reason to exercise supplemental jurisdiction. But if this Court does still exercise supplemental jurisdiction, Plaintiffs' state law theory fails to state a claim on the merits. Although Plaintiffs attempt to sidestep their pleading inadequacies regarding their LAD claim by suggesting a determination on the LAD must await completion of discovery, Defendants' arguments concern the failure of the pleading itself, so that no reason exists

2

to delay a dismissal of this facially-defective claim. Plaintiffs lack any colorable claim that they suffered a violation of the LAD.

Because none of Plaintiffs' claims can go forward, this Court should dismiss the Second Amended Complaint with prejudice.

## ARGUMENT

## POINT I

### QUALIFIED IMMUNITY REQUIRES DISMISSAL OF PLAINTIFFS' DAMAGES CLAIMS.

Plaintiffs' claim for damages cannot proceed. Because Defendants asserted that they have qualified immunity from Plaintiffs' claims, Plaintiffs were required to show it was "clearly established" that Defendants had violated the law. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The Supreme Court has repeatedly made clear that this is a high bar to meet: a right will only be clearly established if there is "controlling authority" or a "robust consensus of cases of persuasive authority" that has placed the constitutional question "beyond debate." *Id.* In other words, it was incumbent on Plaintiffs to then identify a case that shows merely asking foster parents questions regarding their views on homosexuality, asking foster parents whether they would reject a gay foster child or tell such a child that homosexuality was wrongful behavior, or taking into account foster parents' views on homosexuality in considering whether to place foster children in their home (some of whom might be gay) violated a constitutional right.

Plaintiffs have not met their burden. In their moving papers, Defendants noted

3

the absence of any case law that remotely resembled the facts of this case, and observed that the absence of case law required a dismissal of any claim for damages based on qualified immunity. In their opposition, Plaintiffs have failed to identify the requisite factually-similar authority. Instead, Plaintiffs have pointed to just two cases on religious liberty generally, neither of which bear any resemblance to the alleged misconduct here: *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 523 (1993), and *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*, 138 S.Ct. 1719 (2018).

The present case shares nothing in common with the facts in *Lukumi*. *Lukumi* dealt with an ordinance prohibiting slaughter of animals that was targeted at a particular religion and selectively enforced only as to members of that religion. Moreover, *Lukumi* actually undercuts Plaintiffs' arguments, given that Plaintiffs have not plausibly alleged that Defendants' were concerned the Lasches had negative views about homosexuality *because of the Lasches' religion* – as opposed to being generally concerned that the Lasches had a negative view about homosexuality *for any reason*. The Court in *Lukumi* observed that government action "that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." 508 U.S. at 531. There is no plausible factual basis pleaded in the Second Amended Complaint that, had the Lasches' expressed to Defendants a secular view that homosexual behavior is "wrongful," the Lasches would have been treated differently with respect to their potential service as foster parents. This is a far cry from the clarity needed to overcome qualified immunity.

*Masterpiece Cakeshop* likewise is in no way analogous to the facts here. That case involved the question whether private citizens who operated a bakery had the right to refuse to bake sell a wedding cake to a same-sex couple. The case says nothing that bears on whether a state agency can take into potential foster parents' account views on sexuality in determining whether to place foster children into a home in which the foster parents might tell the child their sexuality was wrongful.

Having found no case law that comes close to approximating these alleged facts, Plaintiffs suggest similar case law is not required because the conduct here is supposedly so patently wrongful that the violation would be apparent even in the absence of prior similar cases. To that end, Plaintiffs rely on *Hope*, 536 U.S. 730, for what they claim is an exception to the usual qualified-immunity rules. But this case is nothing like *Hope*, which involved extreme facts not present here. *Hope* was an Eighth Amendment case involving an inmate who was forced to remove his shirt, was handcuffed to a hitching post in the sun for seven hours with no bathroom breaks, and was provided minimal amounts of water—all while a prison guard "taunted him about his thirst." *Id.* at 735. It is unsurprising that such an extreme violation could have been plain without a specific prior case—but that is a cabined outlier case with no bearing on this one.

Moreover, the Court in *Hope* did not actually deny qualified immunity based on a conclusion that, with obviously clarity, the defendants in that case had violated the plaintiff's constitutional rights. Rather, after observing that "[a]rguably, the violation was so obvious that our own Eighth Amendment cases gave respondents fair warning

5

that their conduct violated the Constitution," the Court in *Hope* explained that its denial of immunity actually was based on numerous sources that gave notice to those defendants that the conduct at issue was unconstitutional. *Id.* at 741-42. Specifically, the Court noted that two prior courts of appeals opinions that were binding within the relevant circuit had already held that conduct similar to those defendants' conduct unconstitutional; that an Alabama Department of Corrections ("ADOC") regulation prohibited similar conduct; and that ADOC had been informed in a report from the Department of Justice that the use of a hitching post was unconstitutional. *Id.* at 742. Thus, qualified immunity was denied in *Hope* because that plaintiff had satisfied the traditional requirement to show that "clearly established" prior law existed.  Plaintiffs make no similar showings that Defendants' alleged conduct—attempting to satisfy the State's concern that foster children, including gay children, will be placed in homes that are in their best interests—contravened any circuit cases or regulations.

Additional precedent within this Circuit involving conduct far more extreme than the allegations here have consistently declined to find a violation with "obvious clarity" that might fall within some exception to the requirement that analogous prior cases clearly established the wrongfulness of certain behavior.  For instance, *El v. City of Pittsburgh*, 975 F.3d 327 (3d Cir. 2020), involved an unarmed person who was not committing crime nor attempting to flee or to resist, who was faced with five police officers, one on whom allegedly grabbed him by the wrist and neck and slammed him into a wall before forcing him down to the pavement. *Id.* at 332. In that case, the Third

6

Circuit *rejected* the notion that even that questionable behavior by the officers might have violated constitutional rights "with obvious clarity." *Id.* at 341. Instead, the court denied qualified immunity because a robust consensus of circuit court cases had made clear that "an unarmed individual who is not suspected of a serious crime – including one who is verbally uncooperative or passively resists the police – has the right not to be subjected to physical force such as being grabbed, dragged, or taken down." *Id.* at 339-40.

*Kane v. Barger*, 902 F.3d 185 (3d Cir. 2018), involved a law enforcement officer who inappropriately touched a victim of sexual assault and photographed (with his personal cellular phone) the victim's body, including her breasts, buttocks and genitals. *Id.* at 186. Even with those outrageous facts, the Third Circuit premised its denial of qualified immunity on the fact that analogous cases from other circuits had clearly established that similar conduct was unconstitutional. *Id.* at 195-96.

*L.R. v. School District of Philadelphia*, 836 F.3d 235 (3d Cir. 2016), involved a claim against a government employee who had released a kindergartner into the custody of a stranger. Even with that factual scenario, the Third Circuit's denial of qualified immunity turned on the existence of factually analogous precedent within this Circuit as well from the Seventh and Ninth Circuits, which precedents had clearly established the constitutional right at issue. *Id.* at 248-50.

In short, identification of prior precedent is a key requirement if a plaintiff seeks to overcome a claim of qualified immunity. Plaintiffs have not supplied that necessary

7

ingredient.

Thus, Defendants have qualified immunity for claims for money damages.

## POINT II

### ALLEGED CLAIMS FOR INJUNCTIVE RELIEF ARE PROCEDURALLY BARRED.

Perhaps recognizing that their claim for damages is barred by qualified immunity, Plaintiffs attempt an eleventh-hour change by arguing primarily for an injunctive-relief claim under *Ex Parte Young*. But as explained in Defendants' opening brief, to state a valid claim for injunctive relief under *Ex Parte Young*, a claimant must bring the claim against a public defendant who: (1) is sued in that defendant's official capacity; and (2) have the authority in that official position to implement any injunctive relief that a court may order. Plaintiffs satisfy neither requirement.

For one, Plaintiffs' Second Amended Complaint brings claims exclusively against a series of state officials in their *individual* capacity. But bringing claims against officials in their individual capacity is how one seeks damages from them. To obtain injunctive relief, the plaintiff must plead claims against state officials in their *official* capacity. That makes good sense. An individual-capacity claim seeks recompense for the harm that an individual alleged worked on the plaintiff. An official-capacity claim seeks forward-looking relief that can be fulfilled by the *officer-holder*, even if that officer-holder changes in the future. *See, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-1 (1989) (explaining the distinction between individual- and official-capacity suits, noting that suit against

8

state official in official capacity actually not a claim against that person as an individual person, but rather claim against official's office, seeking remedy against from that office). Plaintiffs' claims are against Kyle Higgins, Mary Lippencot, Katie Epperly, and Janelle Clark in their individual capacities, not their official ones. That is enough to dispose of this injunctive-relief claim.

Even had Plaintiffs sued Defendants in their official capacity, however, the claim still could not proceed. The law is clear that a plaintiff seeking injunctive relief as to state action cannot secure such relief merely by naming some public employee, but rather must sue the official who has the capacity to require the public entity to act in accordance with the injunction. *See, e.g.*, *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021) (in case seeking injunction to bar Texas Attorney General from enforcing provisions of bill that authorized private citizens to file civil actions against persons who provided reproductive health care, Curt dismissing claims because performance of Texas Attorney General's official responsibilities did not include any power to enforce that statute, and so injunction could not have been effective). As this Court aptly summed up the point, *Ex Parte Young* applies only if "a particular official . . . 'by virtue of his office has some connection with the enforcement of the act.'" *Finberg v. Sullivan*, 634 F.2d 50, 53 (3d Cir. 1980) (quoting *Ex Parte Young*, 209 U.S. at 157). There is simply nothing in either Plaintiffs' operative pleading or even its opposition brief that actually provides sufficient facts to infer that these defendants (who have never been alleged to

9

be involved in licensure decisions) can actually put into effect the injunction sought—that is, to provide Plaintiffs a license to serve as foster parents.

Rather than provide evidence or even allegations indicating that defendants have some connection with enforcement of future licensure, Plaintiffs simply argue that the Third Circuit's recent decision supposedly concluded that the Defendants were proper potential defendants for a claim for injunctive relief under *Ex Parte Young*. Plaintiffs are wrong. The Third Circuit's decision expressly concerned whether Defendants could be potentially liable for money damages—leaving open the issue of qualified immunity, as that issue was not before the Third Circuit. The decision does not mention the topic of injunctive relief and does not mention *Ex Parte Young*. See *Lasche v. State of New Jersey*, 2022 WL 604025 (3d Cir. March 1, 2022).

Plaintiffs also cannot rescue this aspect of their claim by suggesting that they have a right to injunctive relief because they generally include a vague category of John Doe defendants. The Second Amended Complaint describes John Doe defendants as follows: "John and Jane Doe 1 through 10 are unknown employees, agents or contractors of the DCP&P who were involved in the allegations set forth below and violated Plaintiffs' rights as set forth below." This description does not purport to sue any John Doe in an official capacity, or even require that the John Doe be an employee of DCP&P. And that hardly brings into this case an official with some connection with the enforcement of the licensing regime. Case law makes clear that a claim for injunctive relief is not viable when a plaintiff makes generalized claims against John Doe

10

defendants that have not plausibly been alleged to have specific power by virtue of their official position that they can take any action required by a court. *See Smith v. NY Sec'y of State*, 2022 WL 970749, at *8 (E.D.N.Y. Mar. 31, 2022)(dismissing purported claim for injunctive relief under *Ex Parte Young* against John Doe defendant, where complaint's allegations failed to plausibly allege that John Doe defendant had the relevant powers or duties to grant the requested relief).

Thus, Plaintiffs' claims for injunctive relief should also be dismissed.

## POINT III

### PLAINTIFFS' STATE LAW CLAIMS MUST ALSO BE DISMISSED.

There is no basis for Plaintiffs' LAD claims to proceed in federal court either for two independent reasons. First, as the parties now agree, this Court should not exercise supplemental jurisdiction over these purely state law claims if it dismisses the federal law claims, as both qualified immunity and *Ex Parte Young* require.

Second, to the extent that this Court does not dismiss all federal claims, or elects to address the LAD claim even though the federal claims have been dismissed, dismissal of that claim is also appropriate. As Defendants demonstrated in their opening brief, the claim fails on its face, as a matter of law. To establish a prima facie case for alleged unlawful disparate treatment in violation of the LAD, a plaintiff must show that a protected group has "been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion" under the anti-discrimination

11

laws. *EEOC v. Metal Serv. Co.,* 892 F.2d 341, 347 (3d Cir.1990). The initial burden of showing a prima facie case is met when the plaintiff "shows that 'it is more likely than not' that the employer's actions were based on unlawful considerations." *Dixon,* 541 *A.*2d at 1051 (quoting *Furnco Constr. Corp. v. Waters,* 438 *U.S.* 567, 577 (1978)). But here, based just on Plaintiffs' pleading and the applicable law, it is manifest that Plaintiff cannot set forth a prima facie case of setting forth the required elements of a prima facie case. Because this motion to dismiss is based on the facial inadequacy of the claim as pleaded, Plaintiffs' are wrong in asserting that the LAD claim can be evaluated only after discovery is conducted and a motion for summary judgment filed. Rather, this Court can, and should, dismiss the claim if it reaches this issue.

## CONCLUSION

For these reasons, and for the reasons given in Defendants' initial moving brief, this Court should dismiss Plaintiffs' Second Amended Complaint.

> Respectfully submitted,
>
> MATTHEW J. PLATKIN
> ACTING ATTORNEY GENERAL
> OF NEW JERSEY
>
> By: /s/ Robert J. McGuire
>     Robert J. McGuire (046361992)
>     Deputy Attorney General

DATE: August 15, 2022