**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHAEL LASCHE and JENNIFER LASCHE,<br><br>       *Plaintiffs*,<br>  v.<br><br>NEW JERSEY DEPARTMENT OF CHILDREN AND FAMILIES; CHRISTINE NORBUT BEYER, in her official capacity as Commissioner of the New Jersey Department of Children and Families; MARY LIPPINCOTT, Manager, Division of Child Protection and Permanency; KYLE HIGGINS, Caseworker, Division of Child Protection and Permanency; KATIE EPPERLY, Supervisor, Division of Child Protection and Permanency; JUSLANDE PACIUS, Resource Parent Supervisor, Division of Child Protection and Permanency; and JANELLE CLARK, Resource Parent Worker, Division of Child Protection and Permanency, each in their official and personal capacities,<br><br>       *Defendants*. | Civil Action No.<br>3:18-cv-17552-GC-TJB<br><br>**PLAINTIFFS'**<br>**SUPPLEMENTAL BRIEF** |

Richard C. Osborne
1919 Pennsylvania Ave. N.W., Ste. 400
Washington, DC 20006
(202) 955-0095
*Counsel for Plaintiffs*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .....................................................................................................1

LEGAL STANDARD................................................................................................1

ARGUMENT .............................................................................................................2

    I.  The Lasches have standing to pursue their specific injunctive relief. ...........................................................................................2

    II.  None of the Lasches' claims for relief are moot. ............................................4

CONCLUSION..........................................................................................................5

CERTIFICATE OF SERVICE ..................................................................................7

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Burns v. PA Dep't of Corr.*,
  544 F.3d 279 (3d Cir. 2008) ...................................................................................2

*Carney v. Adams*,
  592 U.S. 53 (2020)..............................................................................................2, 3

*Chafin v. Chafin*,
  568 U.S. 165 (2013)................................................................................... 1-2, 4, 5

*Clark v. Governor of N.J.*,
  53 F.4th 769 (3d Cir. 2022) ...................................................................................4

*Constitution Party of Pa. v. Aichele*,
  757 F.3d 347 (3d Cir. 2014) ..................................................................................1

*DeJohn v. Temple Univ.*,
  537 F.3d 301 (3d Cir. 2008) ..................................................................................4

*Del. Riverkeeper Network v. Sec. Pa. Dep't of Env't Protection*,
  833 F.3d 360 (3d Cir. 2016) ..................................................................................1

*Free Speech Coal., Inc. v. Att'y Gen. U.S.*,
  825 F.3d 149 (3d Cir. 2016) ..............................................................................2, 3

*Guiterrez v. Saenz*,
  145 S. Ct. 2258 (2025)..................................................................................1, 4, 5

*Hassan v. City of New York*,
  804 F.3d 277 (3d Cir. 2015) ..................................................................................2

*Heine v. Comm'r of Dep't of Cmty. Affs. of N.J.*,
  No. 2:11-cv-5347, 2017 WL 4516568 (D.N.J. Oct. 10, 2017)..............................4

*Lasche v. New Jersey*,
  No. 20-2325, 2022 WL 604025 (3d Cir. Mar. 1, 2022) ........................... 2-3, 4, 5

*Los Angeles County v. Davis*,
  440 U.S. 625 (1979)...............................................................................................4

*Lutter v. JNESO*,
    86 F.4th 111 (3d Cir. 2023) ....................................................................................4

*Mahmoud v. Taylor*,
    145 S. Ct. 2332 (2025) ......................................................................................... 3-4

*Road-Con, Inc. v. City of Philadelphia*,
    120 F.4th 346 (3d Cir. 2024) .............................................................................1, 2

*Sammon v. N.J. Bd. of Med. Exam'rs*,
    66 F.3d 639 (3d Cir. 1995) ......................................................................................2

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
    582 U.S. 449 (2017) ................................................................................................3

## Other Authorities

N.J. Admin. Code § 3A:51-1.1 ........................................................................................3

N.J. Admin. Code § 3A:51-2.5 ........................................................................................3

## INTRODUCTION

For the past seven years, Michael and Jennifer Lasche have sought justice after the New Jersey Department of Children and Families suspended them from providing foster care for sharing their religious beliefs with a foster child. That conduct, as the Third Circuit held, is constitutionally protected and "defendants do not identify a neutral, generally applicable basis for their treatment of the Lasches." This "pattern of antagonism" requires judicial relief.

Defendants, however, have again moved to dismiss and, in response, the Court requested supplemental briefing on two issues. First, whether the Lasches have Article III standing to pursue their requested injunctive relief given that they have not re-applied for a New Jersey foster parent license. And second, whether any claims in this matter are moot.

The Lasches have standing to pursue their requested injunctive relief. That relief would prevent the Defendants from using their religiously discriminatory suspension against the Laches. This suspension is emblazoned in all capital letters on the Lasches' resource parent file. And the suspension is why—for as much as the Lasches want to be New Jersey resource parents again—they cannot do so. Indeed, since the suspension, the Lasches have never had a child placed in their home. Re-application would thus be a "futile gesture." Unless or until this court affords the Lasches' requested relief, New Jersey's regulations, combined with Defendants' "pattern of antagonism," is a barrier to the Lasches being licensed again.

Nor are any of the Lasches' claims moot. The law is clear: So long as it is not "impossible" for the Court to provide the Lasches "any effectual relief whatever," their claims are not moot. Because the Lasches' suspended status is an ongoing injury and an unconstitutional barrier to being resource parents again, this Court can and should remediate that injury. This case is therefore not moot, and Defendants' motion to dismiss should be denied.

## LEGAL STANDARD

Standing "requires a plaintiff to establish (1) an injury in fact (2) that is fairly traceable to the challenged conduct and (3) a remedy that is likely to redress that injury." *Road-Con, Inc. v. City of Philadelphia*, 120 F.4th 346, 354 (3d Cir. 2024) (cleaned up). When evaluating a challenge to standing, the court may consider "sworn and uncontested declarations" outside the pleadings. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 364 (3d Cir. 2014).

A case becomes moot "[o]nly when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Del. Riverkeeper Network v. Sec. Pa. Dep't of Env't Protection*, 833 F.3d 360, 374 (3d Cir. 2016). If plaintiffs have an injury in fact that remains at least partially redressable by the court, even if "the practical impact of any decision is not assured," then the case is not moot. *See Guiterrez v. Saenz*, 145 S. Ct. 2258, 2266, 2269 (2025) (cleaned up); *see also Chafin*

*v. Chafin*, 568 U.S. 165, 175 (2013). Establishing mootness is a "heavy, even formidable burden," *Burns v. PA Dep't of Corr.*, 544 F.3d 279, 284 (3d Cir. 2008) (cleaned up), and one that Defendants bear here, *Road-Con*, 120 F.4th at 356.

## ARGUMENT

### I. The Lasches have standing to pursue their specific injunctive relief.

The Lasches have Article III standing to pursue their injunctive relief. This standing is unaffected by their decision not to re-apply for a resource parent license. That is because the Lasches' unconstitutional suspension remains on their file. This suspension is an ongoing injury-in-fact that the Court can and should remediate. And in any case, attempting a re-application with the suspension on their file would be a "futile gesture"—not a standing requirement. *See, e.g.*, *Carney v. Adams*, 592 U.S. 53, 66 (2020); *Sammon v. N.J. Bd. of Med. Exam'rs*, 66 F.3d 639, 643 (3d Cir. 1995) (finding standing even though "aspiring midwives … never applied for midwife licenses" because doing so would have been a "futile gesture"). Accordingly, there is no basis to conclude that the Lasches lack standing.

The Lasches' suspension resulted from Defendants' "pattern of antagonism" toward the Lasches' religious beliefs. *Lasche v. New Jersey*, No. 20-2325, 2022 WL 604025, at *5 (3d Cir. Mar. 1, 2022). That antagonism remains reflected in the Lasches resource-parent file. And their requested relief seeks to remove that suspension so that the Laches can once again provide children in need with a loving home. *See* Compl. ¶¶264-65. The Lasches satisfy each element of standing necessary to pursue this relief.

First, the Lasches sufficiently pleaded an "injury-in-fact" that is "concrete and particularized." *Hassan v. City of New York*, 804 F.3d 277, 289 (3d Cir. 2015). The Lasches have alleged that Defendants suspended the Lasches solely because of their religious beliefs. *See* Compl. ¶¶141, 148-51, 160-65. "Thus, the Lasches plausibly allege that they engaged in constitutionally protected conduct," and "defendants do not identify a neutral, generally applicable basis for their treatment of the Lasches"—a treatment the Third Circuit called a "pattern of antagonism." *Lasche*, 2022 WL 604025, at *5; *see also Hassan*, 804 F.3d at 289 ("The indignity of being singled out by a government for special burdens on the basis of one's religious calling is enough to get in the courthouse door." (cleaned up)). Because the Lasches remain suspended to this day, *see* Ex. A, at 1-2 ("Home is currently suspended"), their injury is ongoing.

Second, the Lasches' injury is "fairly traceable to the challenged action of" Defendants. *Free Speech Coal., Inc. v. Att'y Gen. U.S.*, 825 F.3d 149, 165 (3d Cir. 2016). In July 2018, after scrutinizing the Lasches over their religious beliefs, Defendants asked a court to remove Jane from the Lasches' home and then used that order to justify their discriminatory suspension. *See* Compl. ¶¶129-138, 141, 148-51; Ex. A, at 4. "That timing is unusually suggestive" of retaliation. *Lasche*, 2022

2

WL 604025, at *5. Then, the Lasches learned in October 2018 that they had, in fact, been suspended by the very office run by Defendants—making it impossible for the Lasches to continue fostering children until the suspension was lifted. *See* Compl. ¶¶160-64. "There can be no doubt that the challenged [conduct] caused the injury-in-fact of which Plaintiffs complain." *Free Speech Coal.*, 825 F.3d at 167 n.14.

Third, the Lasches' ongoing injury is redressable. That's because, absent judicial relief, Defendants can use the Lasches' suspension against them when re-applying for a resource parent license. New Jersey regulations provide that a resource parent "shall demonstrate to the satisfaction of the Department of Children and Families that he or she complies with all applicable provisions of this chapter." N.J. Admin. Code § 3A:51-1.1(b); Compl. ¶32. But as the Lasches were suspended, they must further show that they have "achieved compliance" with the provisions that the Department believes were violated. N.J. Admin. Code § 3A:51-2.5(g); *see also* Compl. ¶¶166-67. The only way the Lasches could "achieve[ ] compliance" would be to forego their religious beliefs. That is because the Lasches' sincerely held religious beliefs are what led to their discriminatory suspension. *See* Compl. ¶¶129-138, 141; Lasche Decl. ¶11; *see also* Ex. A at 4 (noting that Defendants believe that the Lasches' sharing of their religious beliefs "caused the child in placement" "emotional trauma"). Telling the Lasches to risk that unconstitutional choice before seeking judicial relief is not the law. "[W]hen the government chooses to provide public benefits, it may not 'condition the availability of [those] benefits upon a recipient's willingness to surrender his religiously impelled status.'" *Mahmoud v. Taylor*, 145 S. Ct. 2332, 2359 (2025) (quoting *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 462 (2017)). The Lasches "need not allege that [they] would have obtained the benefit but for the unlawful barrier in order to establish standing." *Carney*, 592 U.S. at 66 (cleaned up). Rather, they are able and ready to be resource parents again—so long as they won't be discriminated against by an unlawful suspension. Lasche Decl. ¶12. That suffices for standing.

Moreover, Defendants' "prior pattern of antagonism," *Lasche*, 2022 WL 604025, at *5, and their investigatory power, leaves little doubt that—absent judicial relief—the Lasches will experience further religious discrimination. New Jersey regulations also provide that a previous suspension "*shall* constitute grounds for the Department to investigate the circumstances that led to the original negative action and to make a determination as to whether to reject or process the new application for a license." N.J. Admin. Code § 3A:51-2.5(e) (emphasis added); *see also* Compl. ¶45. The Division suspended the Lasches because their religious beliefs were not "something [it] can support," Compl. ¶129, and then refused—in violation of state regulations—to give the Lasches notice or an opportunity to contest that suspension, *see* Compl. ¶43 ("the resource family parent … shall have the opportunity to request a hearing to contest the action" (quoting N.J. Admin. Code § 3A:51-2.5(d))); Lasche Decl. ¶8. This Court, therefore, "do[es] not need to 'wait and see'" if "a burden on religious exercise will occur" when Defendants "act according to the clear and undisputed"

3

regulatory direction to investigate the Lasches' prior suspension in a re-application. *Mahmoud*, 145 S. Ct. at 2358. Rather, the Court can and should cure the injury-in-fact that exists by the ongoing suspension on the Lasches' resource parent file.

All that is necessary for standing is that "a favorable opinion" would "relieve" at least one of the Lasches' "discrete injur[ies]." *Lutter v. JNESO*, 86 F.4th 111, 128 (3d Cir. 2023). And here, a Court order declaring the Lasches' suspension was unlawful and directing its removal from their file would do just that. Such relief would remove the unconstitutional barriers that prevent the Lasches from being able to serve as resource parents. *See* Compl. ¶¶166-67; Lasche Decl. ¶11-12; *Lasche*, 2022 WL 604025, at *5 (holding that Defendants' conduct "would deter people of ordinary firmness from exercising [their] constitutional rights" (alteration in original)). The Lasches therefore have standing.

## II. None of the Lasches' claims for relief are moot.

Defendants have never argued that the Lasches' claims are moot. And that makes sense, because Defendants cannot meet their "heavy, even formidable" burden to prove mootness. *DeJohn v. Temple Univ.*, 537 F.3d 301, 309 (3d Cir. 2008) (cleaned up). Mootness exists when the plaintiff "possesses [a concrete injury] no longer." *Heine v. Comm'r of Dep't of Cmty. Affs. of N.J.*, No. 2:11-cv-5347, 2017 WL 4516568, at *5 (D.N.J. Oct. 10, 2017). But the Lasches' injuries are ongoing. *See* Compl. ¶¶166-67; Ex. A at 1. That is because the Lasches "remain very interested in serving again as resource parents in New Jersey." Lasche Decl. ¶¶11-12; Compl. ¶¶166-67. Yet the "effects" of the Lasches' suspension—effects that stand in the way of being resource parents again—are not "completely and irrevocably eradicated." *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979). Thus, it is not necessary to address any exceptions to mootness. Rather, neither the Lasches' claims nor their requested relief are moot, because the enduring effects of the Lasches' suspension make it not "impossible for [the court] to grant" the Lasches "any effectual relief whatever." *Clark v. Governor of N.J.*, 53 F.4th 769, 775 (3d Cir. 2022) (cleaned up); *accord Guiterrez*, 145 S. Ct. at 2269 (quoting *Chafin*, 568 U.S. at 172).

The Lasches' nine counts center on Defendants' religious discrimination that resulted in the Lasches' suspension. *See generally* Compl. ¶¶168-262. To remediate that religious discrimination, the Lasches request declaratory and injunctive relief. *See id.* ¶¶263-65. The declaratory relief would "require Defendants to cease discriminating against the Lasches" based on religion. *Id.* ¶263. And the injunctive relief would "prohibit[ ] Defendants … from any suspension of the Lasches[ ] on the basis of their religious beliefs, exercise, or speech." *Id.* ¶264. The Lasches also request injunctive relief that prohibits Defendants "from construing and applying their regulations and policies to discriminate against resource parents on the basis of their religious beliefs, exercise, or speech." *Id.* ¶265. Together, this would provide

effectual relief against the consequences of the religious discriminatory suspension that remains in their resource parent file.

The Lasches' resource parent file says that their home has been suspended since July 3, 2018. *See* Ex. A at 4. Indeed, the latest entry says "***SUSPENDED***DO NOT CONTACT***." *Id.* at 1. The reason for the suspension is stated too. That is, the Division believed that the Lasches' sharing of their religious beliefs with Jane "may have caused [her]" "emotional trauma." *Id.* at 4. In fact, in the words of one Division employee, the Division believed that Jane "would need therapy" because she shared the Lasches' religious beliefs. Compl. ¶135. The suspension thus resulted from Defendants' concluding that the Lasches' religious beliefs are "an issue for … [the] agency" and "not something [it] can support." Compl. ¶129. This is unconstitutional. As the Third Circuit held: "the Lasches plausibly allege[d] that they engaged in constitutionally protected conduct," and there is not a "neutral, generally applicable basis for [Defendants'] treatment of the Lasches." *Lasche*, 2022 WL 604025, at *5. Nothing about this holding has changed.

Because there has not been a complete, irrevocable eradication of the effects of the Lasches' discriminatory suspension, nor any attempt to make the Lasches whole, it is not "*impossible* for a court to grant any effectual relief whatever." *Guiterrez*, 145 S. Ct. at 2269 (emphasis added). That the effects of judicial relief may be uncertain is no basis for mootness. "Courts often adjudicate disputes where the practical impact of any decision is not assured." *Chafin*, 568 U.S. at 175. And here, judicial relief has far more practical impact than awarding damages against an "insolvent" defendant. *See id.* at 175-76 (holding such an award not moot). That is because the Lasches "still want to provide a loving home for more foster children in New Jersey"—but they "need to know New Jersey cannot use [their] religious beliefs against [them] again." Lasche Decl. ¶12. If this Court awarded the Lasches their requested relief, then the effects of the Lasches' suspension would be remediated. Therefore, no part of their case is moot.

## CONCLUSION

Defendants' motion to dismiss should be denied in full.

Dated: October 24, 2025

Respectfully submitted,

/s/ Richard C. Osborne
Richard C. Osborne
Lori H. Windham*
William J. Haun*
Laura Wolk Slavis*
Benjamin A. Fleshman*
THE BECKET FUND FOR
 RELIGIOUS LIBERTY
1919 Pennsylvania Ave. N.W.,
 Ste. 400
Washington, DC 20006
(202) 955-0095
rosborne@becketfund.org
*Counsel for Plaintiffs*

*Admitted pro hac vice

6

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been filed electronically on the 24th day of October 2025. Notice of this filing will be sent to counsel of record for the parties by operation of the Court's electronic filing system and via email, as this filing is under seal.

/s/ *Richard Osborne*
Richard Osborne
